IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| In re: | x : : : : : : : : x | Case No. 2:18-mc-00364-DCN |
| Application of SERVOTRONICS, INC., for an Order Pursuant to 28 U.S.C. §1782 to Take Discovery for Use in a Foreign Proceeding | | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE *EX PARTE* APPLICATION OF SERVOTRONICS
FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

This Memorandum of Law is submitted in support of the *ex parte* Application of SERVOTRONICS, INC. ("SERVOTRONICS"), the respondent in an arbitration proceeding pending in London, England ("London Proceeding"). As more fully set forth below, the London Proceeding arises out of an aircraft engine fire that resulted in damage to the aircraft and one of its engines and which occurred at facilities of The Boeing Company ("Boeing") at the Charleston International Airport during Customer Demonstration and Acceptance Flight Tests. SERVOTRONICS' Application seeks leave to serve deposition Subpoenas on three Boeing employees who participated in maintenance troubleshooting of the engine prior to the fire and in Boeing's official investigation of the event so it may obtain their testimony for use in the London Proceeding.

**SUBJECT MATTER JURISDICTION**

Federal subject matter jurisdiction over this Application is established by 28 U.S.C. § 1331

1

in conjunction with the statutory requirements of 28 U.S.C. § 1782. *See United Company Rusal, PLC v. Trafigura A.G.,* No. 3:11 MC 17, 2011 WL 1045532 (D. Conn. March 16, 2011) (right to discovery under Section 1782 is a right that exists solely pursuant to a federal statute and therefore arises under federal law).[1]

## BACKGROUND

**A.     The Underlying Incident**

The claims underlying the London Proceeding arise out of a 16 January 2016 aircraft engine tail pipe fire in North Charleston, South Carolina. *See* Declaration of Akhil Shah QC ("Shah Decl.") submitted herewith, ¶¶ 8-11.[2] The Trent 1000 engine in question, individually identified by its Manufacturer's Serial Number ("S/N") as S/N 10353 (the "Engine"), was manufactured by Rolls-Royce and installed on the right side of a new Boeing 787-9 Dreamliner aircraft, individually identified as S/N ZB036 and United Kingdom Civil Aviation Authority Registration Number ("R/N") R/N G-VDIA (the "Aircraft"). The Aircraft had been sold but not yet delivered to Virgin Atlantic Airlines ("VAA").

At the time of the fire, the Aircraft was undergoing Customer Demonstration and Acceptance Flight Tests at Boeing's "campus" adjacent to the Charleston International Airport. Proposed deponents TERRANCE SHIFLEY and ALAN SHARKSHNAS are Boeing employees

---

[1] The *Rusal* court observed that "every court that has expressed any view with regard to its jurisdiction to entertain a section 1782 application remained notably silent on any requirement that a basis, other than the federal statute itself, was necessary," *citing In re Chevron Corp.,* 633 F.3d 153 (3rd Cir. 2011); *United States v. Devine,* 208 F.3d 215 (6th Cir. 2000) (Table, text in Westlaw); *Bayer v. Betachem, Inc.,* 173 F.3d 188, 189-90 (3d Cir. 1999); *In re Letters Rogatory from Local Court of Ludwigsburg,* 154 F.R.D. 196, 199 (N.D. Ill. 1994); *In re Letters Rogatory from Supreme Court of Ontario,* 661 F. Supp. 1168, 1169 (E.D. Mich. 1987).

[2] A confidentiality agreement precludes attachment of the Notice of Arbitration and Response. Applicant will submit them under seal if needed for adjudication.

2

who participated in troubleshooting the Engine (the former was on the ground and the latter in the cockpit).  SCOTT WALSTON was Chairperson of the Boeing Incident Review Board that investigated the event.

Applicant SERVOTRONICS manufactures aerospace component parts.  Pursuant to a Long-term Agreement ("LTA") between Rolls-Royce and SERVOTRONICS, Applicant manufactured and shipped a Metering Valve Servo Valve ("MVSV"), individually identified as S/N 1230 and Part Number ("P/N") 77879618 (and hereinafter generally referred to as the "MVSV"), to Rolls-Royce in May 2015.  The MVSV was installed in the Hydro-Mechanical Unit ("HMU") of the Engine which was installed on the Aircraft.  Due to a manufacturing error in the MVSV, an unwanted wafer of metal became lodged in it, which affected Engine fuel flow during the Customer Demonstration and Acceptance Flight Tests.  In response, the Boeing ground crew engaged in troubleshooting of the Engine, which caused a tail pipe fire in the Engine.  The fire resulted in damage to the Aircraft and Engine.

Boeing sought compensation for all alleged resulting damages from Rolls-Royce.  Rolls-Royce and its insurers settled the claim without SERVOTRONICS' participation and then demanded indemnity from SERVOTRONICS, which rejected the demand.

**B.     Arbitration**

According to Clause 27.4 of the LTA, if the parties cannot resolve any disputes by negotiation or mediation:

> [T]he dispute shall be referred to and finally resolved by arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbitrators, and these Rules are deemed to be incorporated by reference into this clause.

Attempts to mediate and settle the dispute were not successful and on 18 September 2018 Rolls-Royce served a Notice of Arbitration upon SERVOTRONICS.  In it, Rolls-Royce seeks

3

approximately $12.8 million from SERVOTRONICS on the alleged grounds that the defect in the MVSV caused the tail pipe fire.

In its Response, served on 16 October 2018, SERVOTRONICS denies all liability and maintains, *inter alia,* that the numerous improper, inadequate, and incorrect actions and failures to act of Boeing and Rolls-Royce personnel constitute the legal cause of the damage and these acts and failures to act are the intervening and superseding causes of the tail pipe fire.

The parties have agreed to arbitration in London rather than Birmingham, England, as a matter of convenience, and the arbitration is accordingly referenced herein as the "London Proceeding."

**C.     Evidence Sought from Boeing Witnesses**

SERVOTRONICS seeks testimony from the proposed deponents because they have knowledge of facts highly relevant to SERVOTRONICS' defenses, including with respect to: (1) the numerous improper, inadequate, and incorrect actions and failures to act of Boeing and Rolls-Royce employees in regard to the chain of causation leading to the tail pipe fire; and, (2) to Boeing's post-incident investigation, which is also relevant to the issues of its negligence and the chain of causation.[3]

Proposed Subpoenas are attached as Exhibit "A" to the Affidavit of Michael B.T. Wilkes ("Wilkes Aff.") submitted concurrently.

---

[3] SERVOTRONICS intends to file another Application in the Northern District of Illinois, where Boeing maintains its international headquarters, seeking the production of documents and other materials related to the event and settlement with Rolls-Royce.

## ARGUMENT

**A.      28 U.S.C. § 1782: In General**

28 U.S.C. § 1782(a) provides in relevant part (emphasis added):

The district court of the district in which ***a person resides or is found*** may order him to give his testimony or statement or to produce a document or other thing for ***use in a proceeding in a foreign...tribunal***. The order may be made...***upon the application of any interested person*** and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

A discovery application under 28 U.S.C. § 1782 presents two inquiries: first, whether the district court is authorized to grant the request under Section 1782, and, if so, whether it should exercise its discretion to do so. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264, 124 S. Ct. 2466 (2004). Once the need for discovery is demonstrated, the burden shifts to the opposing litigant to demonstrate that allowing discovery sought, in whole or part, would disserve the statutory objectives of 28 U.S.C. § 1782. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011).

The portions italicized in the quoted text above pertain to "authorization." Relevant to this Application, they confer authority on this Court to grant this Application if:

(1)     Each BOEING witness, from whom discovery is sought, "resides or is found" in this District;

(2)     The discovery is for "use in a proceeding" in a "foreign tribunal"; and,

(3)     SERVOTRONICS, the applicant, is an "interested person."

*See In re Request from District Court in Svitany, Czech Republic,* 748 F. Supp. 2d 522, 524-25 (E.D. Va. 2010); *In re Application of Purolite,* 3:16-mc-00056-JMC, 2016 WL 1294772 at *2

(D.S.C. April 4, 2016); *see also In re Finserve Group Ltd.*, 4:11-mc-2044-RBH, 2011 WL 5024264, at *1 (D.S.C. Oct. 20, 2011) (the statute and case law "establish three threshold requirements before a court can compel discovery under this statute").

If the statutory requirements are met, the court has discretion to grant the application, taking into account "the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means to our courts….'" *In re Request for Judicial Assistance From the District Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 525 (E.D. Va. 2010); *Purolite,* 3:16-mc-00056-JMC, 2016 WL 1294772 at *2.

The U.S. Supreme Court identified these "discretionary" factors for consideration:

(1)     Whether the party from whom discovery is sought is a participant in the foreign proceeding;

(2)     The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of relevant foreign authorities to U.S. federal court assistance;

(3)     Whether the requests conceal an attempt to circumvent foreign proof-gathering practices; and,

(4)     Whether the requests are unduly intrusive or burdensome.

*Intel,* 542 U.S. at 264-65, 124 S. Ct. at 2483.

As discussed below, the statutory requirements are met and Applicant SERVOTRONICS respectfully submits the discretionary factors also weigh in favor of allowing service of the Subpoenas.

B.     **This Application Satisfies the Statutory Requirements**

   **1.     The Proposed Deponents "Reside or Are Found" in this District**

All three of the proposed deponents are natural persons residing in South Carolina, and in

6

fact within the District's Charleston Division. Furthermore, as natural persons, they will be subject to jurisdiction if personally served within the District. *See Burnham v. Superior Court,* 495 U.S. 604, 110 S. Ct. 2105 (1990) (unanimously holding that service of process on a natural person established jurisdiction although failure to agree on rationale resulted in a plurality opinion).

### 2. Discovery for "Use in a Proceeding" in a "Foreign Tribunal"

The testimony sought is highly relevant to SERVOTRONICS' defenses in the London Proceeding, in particular its contentions that the acts and omissions of Boeing and Rolls-Royce constitute the legal cause of the damage to the Engine and Aircraft as intervening and superseding causes of the fire. Such evidence will be admissible in the London Proceeding and is not barred by any applicable law or the CIArb Rules. *See* Shah Decl., ¶¶ 11 & 18.

SERVOTRONICS acknowledges that some courts have held that private arbitration does not qualify as a "proceeding in a tribunal" for Section 1782 purposes. *Compare, e.g., Kleimar v. Benxi Iron and Steel America, Ltd.,* No. 17-CV-01287, 2017 WL 3386115 (N.D. Ill.) (granting application) *with In re Norfolk S. Corp. Arbitration*, 626 F. Supp. 2d 882, 885 (N.D. Ill. 2009) (denying application).[4] The Fourth Circuit does not appear to have ruled on the issue. In *In re*

---

[4] The Eleventh Circuit discerned a "functionality test" in *Intel* which considered whether the foreign body: (1) acted as a first-instance decision maker and adjudicator; (2) permitted the gathering and submission of evidence; (3) has authority to determine liability and impose penalties; and, (4) issued decisions subject to judicial review. *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc. ("Consorcio I"),* 685 F.3d 987, 994-95 (11th Cir. 2012). In response to a petition for rehearing *en banc,* the court vacated the opinion but without rejecting the functionality test factors: it acknowledged the record was insufficiently developed for detailed review but further concluded the imminence of litigation made the dispute over arbitration largely immaterial. *See "Consorcio II,"* 747 F.3d 1262 (11th Cir. 2014). Not all courts have recognized the "functionality test." *See, e.g., In re Dubey,* 949 F. Supp. 2d 990, 994 n. 3 (C.D. Cal. 2013).

*Application of Finserve Group Limited*, C.A. No. 4:11-mc-2044-RBH, 2011 WL 5024264 (D.S.C. Oct. 20, 2011), this court denied an Application in connection with a proceeding before the London Court of International Arbitration ("LCIA").  The court expressed "serious concerns with finding that private arbitration organizations are 'foreign tribunals,'" but the denial was "without prejudice" apparently because the applicant had not presented evidence regarding the LCIA's "receptivity" with respect to any evidence collected.  As set forth in the Shah Declaration submitted concurrently, English arbitrators are receptive to evidence the parties have gathered by any means.  *See* Shah Decl., ¶¶ 14-15 (discussed also in Section C.1.b below).

Courts that have ruled on the issue appear almost equally split.  *Compare In re Winning (HK) Shipping Co. Ltd.*, No. 09-22659-MC,2010 WL 1796579, at *8 (S.D. Fla. Apr. 30, 2010); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006) (granting the application) *and In re TJAC Waterloo, LLC,* No. 3:16-MC-9-CAN, 2016 WL 1700001 (N.D. Inc. 2016); *In re Operadora DB Mexico S.A.,* No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009); *La Comision Ejecutiva Hidroelecctrica Del Rio Lempa v. El Paso Corp.*, 617 F. Supp. 2d 481, 483, 485 (S.D. Tex. 2008), *aff'd,* 341 F. App'x 31 (5th Cir. 2009) (denying it); *cf. GEA Group AG v. Flex-N-Gate Corp.,* 740 F.3d 411, 419 (7th Cir. 2014) (describing Section 1782's relevance to foreign arbitration proceedings as "uncertain").

The *Intel* decision was not connected with arbitration, but the Supreme Court noted, in discussing how Section 1782 has broadened over the years, that Congress had defined "tribunal" as including "administrative and arbitral tribunals."  *See Intel,* 542 U.S. at 258, 124 S. Ct. at 2479, *quoting* Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev.

1015, 1026-27 and nn. 71 & 73 (1965).[5] Congress introduced the word "tribunal" to ensure that "assistance is not confined to proceedings before conventional courts," but extends also to "administrative and quasi-judicial proceedings." SERVOTRONICS furthermore agrees with the court in *Roz Trading* that arbitration proceedings are before a "tribunal" under both the widely accepted definition and "common usage" of that word.

Some courts that allow Section 1782 procedures in connection with arbitration condition availability on the arbitral decision being subject to judicial review. Any decision in the London Proceeding will be subject to judicial review with respect to substantive jurisdiction issues and "serious irregularities," as mandated under the 1996 [U.K.] Arbitration Act. *See* Shah Decl., ¶¶ 14-15.

Applicant also respectfully contends that any "reviewability" requirement stems from a misconstruction of *Intel*. The proceedings in *Intel* were initiated before the Directorate-General for Competition of the Commission of the European Communities ("D-G Commision")—a body dissenting Justice Breyer described as closer to a "prosecuting attorney" than a "tribunal," as he understood the D-G Commission did not "adjudicate adversary proceedings on the basis of proofs and argument." Intel itself, opposing its competitor's Application for discovery, had argued Section 1782 was inapplicable because no "adjudicative proceeding" was "currently or even imminently on the Commission's agenda." The majority countered that the ever-broadening Section 1782 did not require a "current or imminent" proceeding, and here "a

---

[5] As discussed in *Intel*, before Section 1782 was enacted, judicial assistance was limited to proceedings where a foreign state had a direct interest. Section 1782 dispensed of this requirement when it was enacted in 1948 and allowed depositions in order to assist "pending civil actions" in foreign countries. "Pending civil actions" was replaced the next year with "pending judicial proceedings," and in 1964 depositions and other discovery were allowed in connection "proceedings"—pending or not—"in a foreign or international tribunal." A final 1996 amendment referenced criminal investigations. *See generally Intel*, 542 U.S. at 248-49, 124 S. Ct. at 2473-74.

dispositive ruling by the Commission, reviewable by the European courts, [was] within reasonable contemplation," and the evidence sought was for "use" in such a proceeding. *Intel*, 542 U.S. at 259.

In short, the D-G Commission possibly was not a "tribunal," but its decision would be reviewed by one, and this issue created the rift between the majority and sole dissenter. This might explain, as noted in *Finserve,* why the availability of judicial review was "mentioned at least ten (10) times" in *Intel*. Here, in contrast, the London Proceeding will take place before a "tribunal" that will itself be acting as a court in the first instance, gathering and reviewing evidence and briefs submitted by the parties and then making its adjudication—an adjudication which in any event will be subject to judicial review for substantive jurisdiction and serious irregularities. *See* Shah Decl., ¶¶ 11-15.

This Application accordingly satisfies the requirement that the discovery be "for use in a proceeding in a foreign tribunal." *See also In re Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1030 (N.D. Ill. 2006) (documents discoverable under relevance standards of FRCP discovery rules satisfy "for use in" requirement of Section 1782).

### 3. "Interested Person"

Applicant is the Respondent in the foreign arbitration, and a party qualifies as an "interested person." *Intel,* 542 U.S. at 256-57, 124 S. Ct. at 2478; *In re Chevron Corp.,* No. 7:10-mc-00067, 2010 WL 4883111, *2 (D. W. Va. Nov. 24, 2010).

All of the Section 1782 statutory requirements are satisfied in this case.

## C.     The Additional Discretionary Factors Weigh in Favor of Discovery

SERVOTRONICS accordingly and respectfully requests that this Court exercise its

discretion in granting this *ex parte* Application allowing service of the Subpoena, and as further support shows that the discretionary factors also support its Application.

### 1. The Proposed Deponents (and their Employer) Are Not Parties to the Arbitration

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding...the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel* at 264; *accord Request from District Court in Svitany,* 748 F. Supp. 2d at 526 (factor weighs in favor of granting application when foreign forum cannot compel response from person from whom discovery is sought); *accord Chevron Corp.,* 2010 WL 4883111 at *2. Rolls-Royce and SERVOTRONICS are the sole parties to the London Proceedings. Boeing is not a party and neither are any of the proposed deponents. All are outside the power of the arbitrators to compel their appearance for deposition. SERVOTRONICS accordingly seeks the assistance of this Court through this Application, so that it may prepare its defenses showing, *inter alia,* that the claimed damages were proximately caused by Boeing and Rolls-Royce.

### 2. The Nature of the Foreign Tribunal, Character of Foreign Proceedings, and Receptivity of Foreign Authorities

As explained in the preceding section, arbitration under the CIArb Rules is akin to proceedings in a court of first instance. The parties submit equivalents of pleadings, trial briefs, evidence, and if necessary participate in a hearing. District courts have granted Section 1782 applications where discovery is sought for use in such plenary proceedings—including some arbitration proceedings, as discussed above—and evidence collected pursuant to U.S. discovery is readily admissible in English arbitration proceedings under CIArb Rules and English law. *See*

Shah Decl., ¶¶ 14-15.  Moreover, the London Proceeding has just begun—SERVOTRONICS' English counsel estimates, based on his experience, that the hearing will not take place until July 2019 at the earliest.  The parties exchanged "pleadings" (the Notice and Response) in September-October 2018.  The "trial briefs" (Statements of Claim and Defense) will not be due for months.  The full arbitral panel has not been appointed.

### 3. The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Practices

In the interest of efficiency, and in order to prepare its defense in a timely manner, SERVOTRONICS now submits this Application seeking to compel testimony.  The CIArb Rules contemplate that the parties will engage in discovery and allow for the submission of testimonial evidence, *see* Shah Decl. ¶14, and no judicial or arbitral authority in the U.K. has rejected any effort by Applicant to obtain the testimony.  *Id.,* ¶ 22.

Accordingly, the third discretionary *Intel* factor is met.

### 4. The Discovery Sought Is Not Unduly Intrusive or Burdensome.

SERVOTRONICS is seeking the testimony of only three witnesses and only with respect to a single set of ground and flight tests of the Aircraft and Engine troubleshooting.  Clearly the information sought is not generally available from other sources.  SERVOTRONICS will of course comply with all requirements under Fed. R. Civ. P. 45 and relevant discovery rules.  *See generally In re IKB Deutsche Industriebank AG,* No. 09-cv-7852, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010).

## D.  *Ex Parte* and Alternative Relief

It is respectfully submitted that there is nothing unfair or improper in granting this *ex parte* Application as the proposed deponents will have all available rights under Fed. R. Civ. P.

45(c), and rules applicable to discovery in general (including Fed. R. Civ. P. 26 with respect to protective orders and Fed. R. Civ. P. 30 with respect to the conduct of depositions), when responding to the Subpoena and at the depositions. *See In re Naranjo*, 768 F.3d 332, 339 n.4 (4th Cir. 2014) (Section 1782 process "often occurs ex parte," and "[o]nce the application is granted and the subpoena is issued, the subpoena target can move to quash it" pursuant to Fed. R. Civ. P. 45(c)(3)); *accord Gushlak v. Gushlak,* 486 Fed. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"); *In re Rivada Networks,* 230 F. Supp. 3d 467, 473 (E.D. Va. 2017) (applicant's decision to file Section 1782 application *ex parte* was "unremarkable" as such applications "are routinely filed *ex parte*").

As an alternative, SERVOTRONICS respectfully requests that the Court issue an Order to Show Cause why the Application would not be granted, as in *Gushlak v. Gushlak,* 486 Fed. App'x 215, 2012 WL 2549813 (2d Cir.) (court's decision to issue Order to Show Cause provided respondent with "more relief than is customary in a § 1782 proceeding"). *See also In re Chevron Corp.,* 753 F. Supp. 2d 536 (D. Md. 2010) (also commenced *ex parte* with request for Order to Show Cause as alternative relief). This "extra step" might enhance efficiency when the Applicant is seeking to serve subpoenas on multiple unrelated respondents. Leave to serve three respondents is sought here, but all three are employees of the same entity and testimony is sought in relation to their employment, and Boeing presumably will be coordinating the response on behalf of all three.

## CONCLUSION

Based upon the foregoing, the Application should be granted and this Court should issue an Order directing SERVOTRONICS to serve the proffered Subpoenas  In the alternative, this

13

Court should issue an Order to Show Cause why the Subpoenas should not issue.

                                  **WILKES LAW FIRM P.A.**

October 26, 2018                    By:  */s/ Michael B.T. Wilkes*
                                          Michael B.T. Wilkes (Fed. I.D. No. 4658)
                                          mwilkes@wilkeslaw.com
                                          C. Daniel Atkinson (Fed. I.D. No. 9626)
                                          datkinson@wilkeslaw.com
                                          J. Alexander Joyner (Fed. I.D. #12046)
                                          ajoyner@wilkeslaw.com
                                          200 Meeting Street, Suite 205
                                          Charleston, South Carolina 29401
                                          Tel: (843) 737-6229

                                          Attorneys for Applicant
                                          **SERVOTRONICS, INC.**