**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|                              |   |                          |
|------------------------------|---|--------------------------|
|                              | ) | No. 2:18-mc-00364-DCN    |
| IN RE: SERVOTRONICS, INC.    | ) |                          |
|                              | ) | **ORDER**                |
| _____    | ) |                          |

This matter is before the court on SERVOTRONICS, INC.'s

("SERVOTRONICS") ex parte application for an order pursuant to 28 U.S.C. § 1782 to

take discovery for use in a foreign proceeding, ECF No. 1. For the reasons set forth

below, the court denies the application.

## I.  BACKGROUND

This application arises out of an arbitration related to a fire at Boeing's facilities

in Charleston, South Carolina. On January 16, 2016, Boeing was conducting testing on a

plane when a tailpipe fire occurred in the plane's engine. The engine was manufactured

by Rolls-Royce, and it contained a valve manufactured by SERVOTRONICS. During

testing, a piece of metal got lodged in the valve, which affected the engine fuel flow. As

a result, the Boeing ground crew began troubleshooting the engine, and subsequently the

fire occurred. The fire damaged both the engine and the plane.

Boeing sought compensation for the damage from Rolls-Royce, and Rolls-Royce

settled the claim. Then Rolls-Royce demanded indemnity from SERVOTRONICS,

which SERVOTRONICS refused. Rolls-Royce and SERVOTRONICS had previously

signed a Long-term Agreement ("LTA") that requires the use of arbitration to resolve any

disputes. The LTA states:

> [T]he dispute shall be referred to and finally resolved by arbitration in
> Birmingham, England, under the rules of the Chartered Institute of

Arbitrators, and these Rules are deemed to be incorporated by reference into this clause.

ECF No. 1-1 at 3.  Rolls-Royce served a notice of arbitration on SERVOTRONICS seeking approximately $12.8 million from SERVOTRONICS.  The parties have agreed to arbitrate in London instead of Birmingham as a matter of convenience. SERVOTRONICS does not explicitly allege that arbitration under the rules of the Chartered Institute of Arbitrators is a private arbitration, as opposed to a state-sponsored arbitration, but SERVOTRONICS's legal argument makes it clear that the arbitration at issue here is a private one, or that they consider it to be a private one.

SERVOTRONICS maintains that it is not liable for the fire or the damage caused by the fire, and it claims that fault lies with Rolls-Royce and Boeing.  SERVOTRONICS is seeking testimony from three Boeing employees to be used in the arbitration in support of SERVOTRONICS's defenses.  The first two employees, Terrance Shifley and Alan Sharkshna, are employees who participated in troubleshooting the plane's engine.  The third employee, Scott Walston, was the chairperson of the Boeing Incident Review Board that investigated the fire.  Because the arbitration is set to take place in London, England, SERVOTRONICS requests that the court issue an order allowing SERVOTRONICS to serve subpoenas on the three Boeing employees.  In the alternative, SERVOTRONICS asks that the court issue an order to show cause why the application should not be granted.

## II.  DISCUSSION

Section 1782 allows a district court to order a person who resides in the court's district to provide testimony or documents to be used in a proceeding in a foreign tribunal.  28 U.S.C. § 1782(a).  This statute "affords the district courts wide discretion in

2

responding to requests for assistance in proceedings before foreign tribunals." Al Fayed v. United States, 210 F.3d 421, 424 (4th Cir. 2000). When considering a discovery application under § 1782, the district court should keep in mind the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Letter of Request from Amtsgericht Ingolstadt, Fed. Republic of Germany, 82 F.3d 590, 592 (4th Cir. 1996) (internal quotation omitted).

When presented with a § 1782 discovery application, a district court must engage in two inquiries. First, it must determine if it has the authority to grant the application. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). Courts have such authority when (1) "the person from whom discovery is sought reside[s] (or [can] be found) in the district of the district court to which the application is made"; (2) "the discovery be for use in a proceeding before a foreign tribunal"; and (3) "the application be made by a foreign or international tribunal or any interested person." Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996) (internal quotations omitted).

If the court determines that it has authority under § 1782, it then must decide whether to exercise its discretion to grant the application. Intel, 542 U.S. at 264. "[T]he Supreme Court laid out four discretionary factors to guide the courts in ruling on a § 1782 application: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the § 1782 application is an attempt to 'circumvent foreign proof-gathering restrictions'; and (4) whether the documents and testimony sought are 'unduly intrusive

or burdensome.'" In re Chevron Corp., 2010 WL 4883111, at *2 (W.D. Va. Nov. 24, 2010) (quoting Intel, 524 U.S. at 264–65).

Turning first to whether the court has the authority to grant SERVOTRONICS's application, the first and third requirements are clearly met here. SERVOTRONICS alleges that all three Boeing employees it seeks to depose live in South Carolina, and SERVOTRONICS is an interested party because it is a party to the arbitration. However, whether the second requirement—that the evidence be used "in a proceeding before a foreign tribunal"—is met is not as straightforward.

The issue presented here is whether the private arbitral body conducting the arbitration qualifies as a "tribunal" for the purposes of § 1782. The Second and Fifth Circuits have held that private arbitral bodies do not fall within the ambit of § 1782. After these two cases were decided, the U.S. Supreme Court interpreted § 1782 in the seminal case Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Lower courts have subsequently disagreed on how Intel affects § 1782 on the issue of private arbitration. For reasons discussed below, the court holds that the Intel decision did nothing to alter the Second and Fifth Circuits' holdings, and as such, § 1782 does not apply to private international arbitrations.

**A. Second and Fifth Circuit Opinions**

The Fourth Circuit has not considered § 1782 in the context of private arbitrations, but the Second Circuit and the Fifth Circuit have both held that § 1782 does not apply to private arbitrations because these arbitrations are not before a "tribunal" as required by § 1782. Nat'l Broad. Co. v. Bear Sterns & Co., Inc., 165 F.3d 184 (2d Cir. 1998); Republic of Kazakhstan v. Biedermann Int'l, 168 F.3d 880 (5th Cir. 1999).

In <u>Republic of Kazakhstan</u>, the Fifth Circuit explained that "[r]eferences in the United States Code to 'arbitral tribunals' almost uniformly concern an adjunct of a foreign government or international agency," and "[t]here is no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration."  168 F.3d at 882.[1]  As such, the Fifth Circuit stated that the purpose of changing the language in § 1782 to "foreign and international tribunals" was "to further comity among nations, not to complicate and undermine the salutary device of private international arbitration."  <u>Id.</u> at 883.  Similarly, the Second Circuit reviewed the legislative history of § 1782 and concluded that Congress did "intend[] to cover governmental or intergovernmental arbitral tribunals."  165 F.3d at 190.  However, the court went on to note that

> [t]he legislative history's silence with respect to private tribunals is especially telling because we are confident that a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by private parties would not have been lightly undertaken by Congress without at least a mention of this legislative intention.

<u>Id.</u>  Therefore, these cases clearly establish that § 1782 does not cover private arbitrations.

### B.  <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>

After <u>Nat'l Broad. Co.</u> and <u>Republic of Kazakhstan</u> were decided, the Supreme Court interpreted § 1782 for the first time in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>

---

[1] In a footnote, the Fifth Circuit notes that "[s]ubsequent articles by Professor Smit, however, champion the majority view of commentators that private commercial arbitrations are within § 1782."  <u>Republic of Kazakhstan</u>, 168 F.3d at 882 n.5 (citing various law review articles).  However, "the majority view of commentators" is not binding on the court.

5

Intel provided significant guidance on the contours of § 1782, but it clearly did not address the issue of private arbitration or overrule Nat'l Broad. Co. and Republic of Kazakhstan.

In Intel, the Supreme Court held that (1) § 1782 does not contain a foreign-discoverability requirement; (2) § 1782 makes discovery available to complainants who are not private "litigants" or sovereign agents, and (3) a proceeding does not need to be "pending" before a tribunal to invoke § 1782. 542 U.S. at 253–54. Of relevance here, the Court discussed the definition of a "tribunal" in dicta. Id. at 257.

The proceeding in Intel for which the applicant sought discovery was a proceeding before the Directorate-General for Competition ("DG-Competition") of the Commission of the European Communities ("Commission"). Id. In contemplating whether the DG-Competition and Commission were a "tribunal" under § 1782, the Court first noted that the Commission's decision may be judicially reviewed by the Court of First Instance and the European Court of Justice.[2] Id. It then discussed Congress's

---

[2] In its application, SERVOTRONICS explains that "[s]ome courts that allow Section 1782 procedures in connection with arbitration condition availability on the arbitral decision being subject to judicial review." ECF No. 1-1 at 9. SERVOTRONICS then argues that any decision resulting from the arbitration will be subject to judicial review, or in the alternative, this judicial review requirement misconstrues Intel. Id. As SERVOTRONICS notes, Intel discussed judicial review to determine if the Commission was a tribunal or more like a "prosecuting authority." 542 U.S. at 270 (Breyer, J., dissenting); id. at 255 n.9 (majority opinion) (calling the dissent's prosecuting authority classification "a questionable suggestion in view of the European Commission's authority to determine liability and impose penalties, dispositions that will remain final unless overturned by the European courts"). Judicial review suggested that the Commission made decisions like a tribunal, not like a prosecuting authority. Id. at 257. Therefore, the Court ultimately held that "the Commission is a § 1728(a) 'tribunal' when it acts as a first-instance decisionmaker." Id. at 246–47.

Here, the arbitral body conducting the arbitration is clearly a "first-instance decisionmaker" with more than an investigatory function, as it has the power to review

expansion of the text of § 1782 from "any judicial proceeding" to "a proceeding in a foreign or international tribunal." Id. at 257–58. The Court noted that "Congress understood that change to 'provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings abroad.'" Id. (citing S. Rep. No. 1580, at 7–8, U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788). The Court also included a definition of the word "tribunal" from a law review article that defined "tribunal" as "includ[ing] investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." Id. at 258 (emphasis added) (quoting Hans Smith, International Litigation Under the United States Code, 65 Columbia L. Rev. 1015, 1026 n.71 (1965)). The Court then went on to hold that the Commission, "to the extent that it acts as a first-instance decisionmaker," was a tribunal within "§ 1782's ambit." Id.

Of particular importance here, Intel does not explicitly discuss arbitration. The Court does explain that "the term 'tribunal' includes . . . arbitral tribunals," but it does not specify whether that definition includes private arbitral tribunals. Id. at 258 (citation omitted). Therefore, Intel did not alter the holdings in Nat'l Broad. Co. and Republic of Kazakhstan that private arbitrations are not within the purview of § 1782.

### C. Subsequent District Court Opinions

Despite the lack of discussion on arbitration in Intel, district courts have subsequently been divided on whether § 1782 covers private arbitration. Some courts have continued to follow Nat'l Broad. Co. and Republic of Kazakhstan while noting that

---

evidence and make a decision. ECF No. 1-1 at 10. Therefore, an inquiry into whether a decision from the arbitration may be judicially reviewed is unnecessary.

"the holding in <u>Intel</u> does not necessarily extend the reach of section 1782 to purely private arbitrations."  <u>Ex rel Application of Winning (HK) Shipping Co. Ltd.</u>, 2010 WL 1796579, at *7 (S.D. Fla. April 30, 2010); <u>see also</u> <u>In re Operadora DB Mexico, S.A. de C.V.</u>, 2009 WL 2423138, at *6 (M.D. Fla. Aug. 4, 2009) ("The <u>Intel</u> Court was not faced with—and did not address—the question of whether a private arbitral tribunal is a foreign or international tribunal under § 1782.").  These courts have held that private arbitration is not covered by § 1782.  <u>In re Dubey</u>, 949 F. Supp. 2d 990, 993–94 (C.D. Cal. 2013); <u>In re Arbitration between Norfolk S. Corp., Norfolk S. Ry. Co., & Gen. Sec. Ins. Co. & Ace Bermuda Ltd.</u>, 626 F. Supp. 2d 882, 885–86 (N.D. Ill. 2009).

Other courts have relied on the reasoning in <u>Intel</u> to find that private arbitral bodies fall within the ambit of § 1782's definition of "tribunal" despite the fact that <u>Intel</u> did not address private arbitration.  <u>In re Hallmark Capital Corp.</u>, 534 F. Supp. 2d 951, 955 (D. Minn. 2007); <u>see also</u> <u>In re Roz Trading Ltd.</u>, 469 F. Supp. 2d 1221, 1224 (N.D. Ga. 2006) ("Although the Supreme Court in <u>Intel</u> did not address the precise issue of whether private arbitral panels are 'tribunals' within the meaning of the statute, it provided sufficient guidance for this Court to determine that arbitral panels convened by the [private arbitral institution] are 'tribunals' within the statute's scope.").

In <u>In re Roz Trading</u>, the U.S. District Court for the Northern District of Georgia held that the private arbitral tribunal at issue was a tribunal within the meaning of § 1782. 469 F. Supp. 2d at 1226.  It did so in part by interpreting <u>Intel</u>'s discussion of § 1782's legislative history and Congress's change in §1782's language from "any judicial proceeding" to "a proceeding in a foreign or international tribunal" to mean that the <u>Intel</u> Court "found a legislative intent to broaden the scope of the term 'tribunal.'"  <u>Id.</u> at 1227.

In a similar vein, the court in In re Hallmark Capital Corp. held that private arbitration bodies qualify as §1782 tribunals.  534 F. Supp. 2d at 957.  It discussed the Court's "expansive approach" to its other holdings in Intel as evidence that "the Court would not restrict the scope of 'tribunal' to necessarily preclude assistance for use in private arbitrations."  Id. at 955.

Moreover, these courts have found the reasoning in Nat'l Broad. Co. and Republic of Kazakhstan to be no longer valid after Intel.  See In re Roz Trading Ltd., 469 F. Supp. 2d at 1228 ("For these reasons, this Court declines to follow the Second and Fifth Circuits because, in light of Intel, they are not persuasive authority."); In re Babcock Borsig AG, 583 F. Supp. 2d 233, 239 (D. Mass. 2008), disagreed on other grounds by In re Schlich, 893 F.3d 40 (1st Cir. 2018) ("I do not find the reasoning in National Broadcasting Co. and Republic of Kazakhstan to be persuasive, particularly in light of the subsequent Supreme Court decision in Intel.").  But the Intel Court never mentioned Nat'l Broad. Co. and Republic of Kazakhstan.  And other than its passing mention when defining the word "tribunal," the Intel Court did not specifically discuss arbitral tribunals, much less private arbitral tribunals.  As such, the Intel decision did nothing to alter Nat'l Broad. Co. and Republic of Kazakhstan's holdings that § 1782 does not apply to private international arbitrations.  Stretching the language of Intel to apply to private arbitration is simply too far of a reach absent more explicit language from Congress or the Supreme Court.  Because the private arbitral body conducting the arbitration here does not fall within § 1782's definition of "tribunal," the court does not have the authority under § 1782 to grant SERVOTRONICS's application.

### III.  CONCLUSION

For the foregoing reasons the court **DENIES** SERVOTRONICS's ex parte

application for an order pursuant to 28 U.S.C. § 1782 to take discovery for use in a

foreign proceeding

    **AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 6, 2018**
**Charleston, South Carolina**