**EXHIBIT 2**

No. 18-2454

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

SERVOTRONICS, INC.,

*Movant-Appellant*,

*v.*

THE BOEING COMPANY and ROLLS-ROYCE PLC,

*Intervenors-Appellees*.

_____

On Appeal from the United States District Court
for the District of South Carolina
No. 2:18-mc-00364-DCN

_____

## BRIEF FOR INTERVENORS-APPELLEES
## THE BOEING COMPANY AND ROLLS-ROYCE PLC

_____

Henry L. Parr, Jr.
  *Counsel of Record*
WYCHE, P.A.
44 E. Camperdown Way
Greenville, SC  29601
Telephone:  (864) 242-8209
Facsimile:   (864) 235-8900

Larry S. Kaplan
Matthew J. Obiala
KMA ZUCKERT LLC
200 W. Madison St., 16th Floor
Chicago, IL  60606
Telephone:  (312) 345-3000
Facsimile:   (312) 345-3119

*Counsel for Rolls-Royce PLC*

Scott P. Martin
  *Counsel of Record*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  (206) 359-3600
Facsimile:   (206) 359-4600

Bates McIntyre Larson
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL  60603
Telephone   (312) 324-8640
Facsimile:   (312) 324-9640

*Counsel for The Boeing Company*

**EXHIBIT 2**

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and this Court's Rule 26.1, appellees The Boeing Company ("Boeing") and Rolls-Royce PLC ("Rolls-Royce") state:

1.     Boeing and Rolls-Royce are publicly held corporations or other publicly held entities.

2.     Boeing has no parent corporation.  The parent corporations of Rolls-Royce are Rolls-Royce Holdings PLC and Rolls-Royce Group PLC.

3.     No publicly held corporation or other publicly held entity owns 10% or more of Boeing's stock.  100% of the stock of Rolls-Royce is held by Rolls-Royce Holdings PLC and Rolls-Royce Group PLC.

4.     In addition to the disclosures made by appellant Servotronics, Inc., Global Aerospace, Inc. has a direct financial interest in the outcome of this litigation.

5.     Neither Boeing nor Rolls-Royce is a trade association.

6.     This case does not arise out of a bankruptcy proceeding.

Dated:  February 22, 2019                    Respectfully submitted,

    /s/ Henry L. Parr, Jr.                      /s/ Scott P. Martin
Henry L. Parr, Jr.                          Scott P. Martin
*Counsel for Rolls-Royce PLC*            *Counsel for The Boeing Company*

**EXHIBIT 2**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

RELEVANT STATUTORY PROVISION ..........................................................3

JURISDICTIONAL STATEMENT ....................................................................3

STATEMENT OF THE ISSUES.........................................................................4

STATEMENT OF THE CASE.............................................................................4

          A.     Statutory Background ................................................................4

          B.     This Litigation............................................................................7

SUMMARY OF ARGUMENT ............................................................................9

STANDARD OF REVIEW ................................................................................12

ARGUMENT ......................................................................................................12

    I.     The District Court Correctly Determined That Section 1782(a)
          Cannot Be Used To Obtain Evidence For Private, Contract-
          Based Arbitrations ................................................................................12

          A.     Section 1782(a)'s Text, Context, Purpose, And
                  Legislative History Establish That Private Arbitral Panels
                  Are Not "Foreign Or International Tribunal[s]".......................15

                  1.     To Qualify As A "Foreign Or International
                          Tribunal," An Entity Must Exercise Government-
                          Conferred Authority ......................................................16

                  2.     Construing "Foreign Or International Tribunal" To
                          Exclude Private Arbitration Avoids A Serious
                          Conflict With The Federal Arbitration Act ...................23

                  3.     Section 1782(a)'s Legislative History Confirms
                          That The Statute Does Not Authorize Discovery
                          For Use In Private Arbitrations ......................................28

## TABLE OF CONTENTS
### (continued)

|  |  | | **Page** |
| --- | --- | --- | --- |
| | B. | Servotronics Is Incorrect That "Foreign Or International Tribunal" Is Properly Interpreted To Include A Private Arbitral Panel | 30 |
| | | 1. Servotronics's Proposed Interpretation Contravenes Settled Principles Of Statutory Construction | 31 |
| | | 2. Servotronics's Proposed Interpretation Is Not Supported By *Intel v. Advanced Micro Devices* | 34 |
| II. | | If This Court Were To Conclude That Section 1782(a) Applies To Private Arbitration, It Should Remand For The District Court To Evaluate Servotronics's Application In The First Instance | 40 |
| | A. | The Decision Whether To Permit Discovery Under Section 1782(a) Is Committed To The District Court's Discretion | 41 |
| | B. | This Case Does Not Fall Within Any Exception To The Remand Requirement For Discretionary Decisions | 42 |
| | | 1. Section 1782(a) Discovery Is Unnecessary For Servotronics To Obtain Evidence From Boeing | 43 |
| | | 2. The CIArb Will Not Be Receptive To A United States Court Usurping The Panel's Authority | 43 |
| | | 3. Servotronics Is Attempting To Circumvent Agreed-Upon Proof-Gathering Restrictions | 44 |
| | | 4. The Proposed Depositions And Other Discovery Would Impose A Significant Burden On Boeing | 44 |
| CONCLUSION | | | 46 |

**EXHIBIT 2**

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*AT&T Mobility LLC v. Concepcion,*
    556 U.S. 333 (2011)........................................................................26

*Bailey v. United States,*
    516 U.S. 137 (1995)........................................................................33

*Burton v. Bush,*
    614 F.2d 389 (4th Cir. 1980) ........................................................24

*Comision Ejecutiva Hidroelectrica del Rio Lempa v. El Paso Corp.,*
    617 F. Supp. 2d 481 (S.D. Tex. 2008)....................................36, 37

*COMSAT Corp. v. Nat'l Sci. Found.,*
    190 F.3d 269 (4th Cir. 1999) ....................................................24, 27

*Corley v. United States,*
    556 U.S. 303 (2009)........................................................................19

*El Paso Corp. v. Comision Ejecutiva Hidroelectrica del Rio Lempa,*
    341 F. App'x 31 (5th Cir. 2009) (unpub.) .........................13, 37, 40

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)..............................................................23, 26

*Gordon v. Braxton,*
    780 F.3d 196 (4th Cir. 2015) ........................................................41

*Hedin v. Thompson,*
    355 F.3d 746 (4th Cir. 2004) ........................................................19

*In re Bayer AG,*
    146 F.3d 188 (3d Cir. 1988) .....................................................41, 42

*In re Consorcio Ecuatoriano de Telecomunicaciones S.A.,*
    685 F.3d 987 (11th Cir. 2012) ......................................................31

*In re Consorcio Ecuatoriano de Telecomunicaciones S.A.,*
    747 F.3d 1262 (11th Cir. 2014) ....................................................31

**EXHIBIT 2**

# TABLE OF AUTHORITIES
## (continued)

**Cases** (continued)                                                                 **Page(s)**

*In re Dubey*,
    949 F. Supp. 2d 990 (C.D. Cal. 2013).....................................................15, 25

*In re Grand Jury*,
    619 F.2d 1022 (3d Cir. 1980) ..........................................................................45

*In re Grupo Unidos por el Canal S.A.*,
    No. 14-mc-80277, 2015 WL 1815251 (N.D. Cal. Apr. 21, 2015)...............40

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992) ..............................................................................41

*In re Medway Power Ltd.*,
    985 F. Supp. 402 (S.D.N.Y. 1997) ............................................................17, 32

*In re Naranjo*,
    768 F.3d 332 (4th Cir. 2014) ...........................................................................3

*In re Norfolk S. Corp. Arbitration*,
    626 F. Supp. 2d 882 (N.D. Ill. 2009)...........................................................*passim*

*In re Operadora DB Mex. S.A. de C.V.*,
    No. 6:09-cv-383, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009) .............38, 40

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)...................................................................................*passim*

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ...........................................................................41

*Nat'l Broad. Co. v. Bear Stearns & Co.*,
    165 F.3d 184 (2d Cir. 1999) ....................................................................*passim*

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019).................................................................................31, 32

*Republic of Kazakhstan v. Biedermann Int'l*,
    168 F.3d 880 (5th Cir. 1999) .....................................................................*passim*

**EXHIBIT 2**

## TABLE OF AUTHORITIES
### (continued)

**Cases** (continued)                                                    **Page(s)**

*Ridenour v. Andrews Fed. Credit Union,*
    897 F.2d 715 (4th Cir. 1990) .........................................................................41

*Roberts v. Sea-Land Servs., Inc.,*
    566 U.S. 93 (2012).............................................................................................20

*Singleton v. Wulff,*
    428 U.S. 106 (1976)..........................................................................................42

*Stephens ex rel. R.E. v. Astrue,*
    565 F.3d 131 (4th Cir. 2009) ..........................................................................12

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010)..........................................................................................14

*Sullivan v. Stroop,*
    496 U.S. 478 (1990)..........................................................................................23

*Turner v. City of Memphis,*
    369 U.S. 350 (1962)..........................................................................................42

*United States v. Williams,*
    553 U.S. 285 (2008)....................................................................................32, 33

*Vermilya-Brown Co. v. Connell,*
    335 U.S. 377 (1948)..........................................................................................20

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,*
    489 U.S. 468 (1989)..........................................................................................14

*Webb v. Bladen,*
    480 F.2d 306 (4th Cir. 1973) ..........................................................................41

*Whitman v. Am. Trucking Ass'ns, Inc.,*
    531 U.S. 457 (2001)..........................................................................................33

*Wisc. Cent. Ltd. v. United States,*
    138 S. Ct. 2067 (2018)......................................................................................16

# TABLE OF AUTHORITIES
## (continued)

**Statutes**                                                    **Page(s)**

5 U.S.C. § 552b(c)(10)................................................................18

9 U.S.C. § 1 .............................................................................2

9 U.S.C. § 7 ......................................................................18, 24

9 U.S.C. § 202........................................................................26

9 U.S.C. § 302........................................................................26

16 U.S.C. § 973n....................................................................18

22 U.S.C. § 270 (repealed)..............................................5, 6, 21, 22

22 U.S.C. § 270g (repealed)..............................................6, 21, 22

22 U.S.C. § 290k-11(a)..........................................................18

22 U.S.C. § 1650(a) ...............................................................18

28 U.S.C. § 1291......................................................................3

28 U.S.C. § 1331......................................................................3

28 U.S.C. § 1782(a) .........................................................*passim*

30 U.S.C. § 1412(b)(4)............................................................18

Act of June 25, 1948, Pub. L. No. 80-773, ch. 646, 62 Stat. 869 ...........................21

Act of May 24, 1949, Pub. L. No. 81-72, ch. 139, 63 Stat. 89 ...........................5, 21

Act of Sept. 2, 1958, Pub. L. No. 85-906, 72 Stat. 1743 .........................5, 6, 28, 29

Act of Oct. 3, 1964, Pub. L. No. 88-619, 78 Stat. 995 .......................................6, 21

Deep Seabed Hard Mineral Resources Act, Pub. L. 96-283, 94 Stat. 553
    (1980)................................................................................18

Government in the Sunshine Act, Pub. L. 94-409, 90 Stat. 1241 (1976)...............18

## TABLE OF AUTHORITIES
### (continued)

**<u>Other Authorities</u>**                                                    **<u>Page(s)</u>**

American Heritage Dictionary of the English Language
  (3d ed. 1992)......................................................................32

Black's Law Dictionary (4th ed. 1951) ..................................16

Black's Law Dictionary (10th ed. 2014) ..........................31, 32

Brief for United States as *Amicus Curiae*, *Intel Corp. v.*
  *Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (No. 02-572)..........6, 17

H.R. Rep. No. 88-1052 (1963)................................................29

S. Rep. No. 88-1580 (1964),
  *reprinted in* 1964 U.S.C.C.A.N. 3782................................6, 29, 35

Smit, Hans, Assistance Rendered by the United States in Proceedings
  Before International Tribunals, 62 Colum. L. Rev. 1264 (1962)...........17, 22

Smit, Hans, International Litigation Under the United States Code,
  65 Colum. L. Rev. 1015 (1965).......................................38

Webster's New International Dictionary of the English Language
  (2d ed. 1955)....................................................................16

Webster's New International Dictionary of the English Language
  (3d ed. 1981)....................................................................32

**EXHIBIT 2**

## INTRODUCTION

Appellant Servotronics, Inc. ("Servotronics") seeks discovery in the United States for use in a private, contract-based arbitration in the United Kingdom with appellee Rolls-Royce PLC ("Rolls-Royce"). Servotronics agreed in its contract with Rolls-Royce that the arbitration will be governed by the rules of the Chartered Institute of Arbitrators ("CIArb"), which provide for discovery only at the arbitral panel's request. Before the arbitral panel had even been created, however, Servotronics filed an *ex parte* application in the district court to depose current and former employees of appellee The Boeing Company ("Boeing") in connection with the arbitration.

Servotronics purported to invoke 28 U.S.C. § 1782(a), which permits district courts to order discovery "for use in a proceeding in a foreign or international tribunal." The Second and Fifth Circuits, however, have held that a private arbitration does not constitute a "proceeding in a foreign or international tribunal." *See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 188–91 (2d Cir. 1999); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881–83 (5th Cir. 1999). Both courts construed this phrase to mean a proceeding in an adjudicatory body that exercises authority conferred by a government or group of governments. The statute therefore excludes private arbitral bodies such as the CIArb that are authorized not

**EXHIBIT 2**

by the government, but by the parties' agreement to submit their disputes to arbitration.

In reaching this conclusion, the Second and Fifth Circuits emphasized that any other construction of the statute would override the parties' bargained-for agreement, undermine one of the most significant advantages of arbitration, and risk conflict with the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and the strong pro-arbitration policy it embodies. Neither court of appeals found any evidence that Congress intended that anomalous result. *See Nat'l Broad. Co.*, 165 F.3d at 190; *Biedermann*, 168 F.3d at 882.

The district court below adopted the Second and Fifth Circuits' reasoning and accordingly denied Servotronics's *ex parte* application. In doing so, the court considered the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which was decided after *National Broadcasting Co.* and *Biedermann*, and which Servotronics relies upon heavily in its brief. The district court correctly determined that *Intel* did not overrule those prior decisions or undermine their reasoning. Although Boeing and Rolls-Royce were not served with Servotronics's application, and did not appear before the district court, they have intervened in this appeal to defend the district court's order.

**EXHIBIT 2**

## RELEVANT STATUTORY PROVISION

Section 1782(a) of Title 28 of the United States Code provides in relevant

part:

> The district court of the district in which a person resides or is found
> may order him to give his testimony or statement or to produce a doc-
> ument or other thing for use in a proceeding in a foreign or international
> tribunal, including criminal investigations conducted before formal ac-
> cusation. The order may be made . . . upon the application of any in-
> terested person. . . . The order may prescribe the practice and procedure,
> which may be in whole or part the practice and procedure of the foreign
> country or the international tribunal, for taking the testimony or state-
> ment or producing the document or other thing. To the extent that the
> order does not prescribe otherwise, the testimony or statement shall be
> taken, and the document or other thing produced, in accordance with
> the Federal Rules of Civil Procedure.

## JURISDICTIONAL STATEMENT

On October 26, 2018, Servotronics filed an *ex parte* application requesting

discovery under 28 U.S.C. § 1782. *See* J.A. 3–5. The district court had jurisdiction

under 28 U.S.C. § 1331 and denied Servotronics's application on November 6, 2018.

*See* J.A. 246–55. Servotronics filed its notice of appeal on November 30, 2018. *See*

*id.* at 256. On January 14, 2019, this Court granted motions by Boeing and Rolls-

Royce to intervene on appeal. The Court has jurisdiction under 28 U.S.C. § 1291.

*See In re Naranjo*, 768 F.3d 332, 346–47 (4th Cir. 2014).

EXHIBIT 2

## STATEMENT OF THE ISSUES

1.     Whether 28 U.S.C. § 1782(a), which permits district courts to order discovery "for use in a proceeding in a foreign or international tribunal," authorizes discovery for use in a private, contract-based arbitration.

2.     Whether, if this Court concludes that 28 U.S.C. § 1782(a) authorizes discovery for use in a private, contract-based arbitration, the Court should remand the case for the district court to consider in the first instance whether to exercise its discretion—based on the still-to-be-determined facts of the case—to permit discovery under Section 1782(a).

## STATEMENT OF THE CASE

Invoking 28 U.S.C. § 1782(a), Servotronics filed an *ex parte* application seeking the district court's permission to serve deposition subpoenas on three employees of Boeing—two current and one former—for use in a private arbitration that will be held in the United Kingdom between Servotronics and Rolls-Royce.

### A.    Statutory Background

Since 1855, Congress has provided a procedural mechanism by which United States courts may assist foreign tribunals in gathering evidence. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Initially, this "aid took the form of letters rogatory forwarded through diplomatic channels," which were available only when "the government of a foreign country [was] a party or ha[d] an interest in the proceeding." *Id.* at 247–48.

**EXHIBIT 2**

Responding to issues experienced by two intergovernmental tribunals, Congress began expanding this regime in the early 1930s. During that period, Congress authorized commissioners or members of an "'international tribunal or commission, established pursuant to an agreement between the United States and any foreign government or governments,'" to compel the production of evidence in proceedings involving the United States. *Nat'l Broad. Co. v. Bear Stears & Co.*, 165 F.3d 183, 189 (1999) (quoting former 22 U.S.C. § 270 (repealed)). Then, "[i]n 1948, Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Intel*, 542 U.S. at 247–48. "That legislation, codified as § 1782," allowed federal district courts to order depositions "'to be used in *any civil action* pending in any court in a foreign country with which the United States is at peace.'" 542 U.S. at 248 (quoting Act of June 25, 1948, Pub. L. No. 80-773, ch. 646, § 1782, 62 Stat. 869, 949) (emphasis in original). A year later, Congress replaced "'civil action'" with "'judicial proceeding.'" *Ibid.* (quoting Act of May 24, 1949, Pub. L. No. 81-72, ch. 139, § 93, 63 Stat. 89, 103).

In 1958, "Congress created a Commission on International Rules of Judicial Procedure (Rules Commission) to 'investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements.'" *Intel*, 542 U.S. at 248 (quoting Act of Sept. 2,

USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 15 of 60

**EXHIBIT 2**

1958, Pub. L. No. 85-906, § 2, 72 Stat. 1743).  Congress "instructed the Rules Commission to recommend procedural revisions 'for the rendering of assistance to foreign courts *and quasi-judicial agencies*.'"  *Id.* at 257–58 (quoting § 2, 72 Stat. at 1743) (emphasis in original).  Following its study, the Rules Commission proposed legislation designed to implement its recommendations, which "included a complete revision of § 1782."  *Id.* at 248.

Congress enacted the Rules Commission's proposed revision to Section 1782 in 1964.  *See Intel*, 542 U.S. at 248 (citing Act of Oct. 3, 1964, Pub. L. No. 88-619, § 9(a), 78 Stat. 995, 997).  Of central import here, the 1964 amendment replaced the phrase "'in any judicial proceeding pending in any court in a foreign country'" with the phrase "'in a proceeding in a foreign or international tribunal.'"  *Id.* at 248–49 (quoting Brief for United States as *Amicus Curiae* at 6 & 4a–5a, *Intel*, 542 U.S. 241 (2004) (No. 02-572)) (emphasis omitted).  This change merged 22 U.S.C. §§ 270–270g—which Congress simultaneously repealed, *see* § 3, 78 Stat. at 995—with the revised and expanded Section 1782.  *See Nat'l Broad. Co.*, 165 F.3d at 189.  Consistent with the 1958 legislation creating the Rules Commission, "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'"  *Intel*, 542 U.S. at 249 (quoting S. Rep. No. 88-1580 ("Senate Report"), at 7 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788).

**B.    This Litigation**

This case stems from a fire that occurred during testing of an aircraft engine on January 16, 2016. *See* Docket Entry ("D.E.") 1-1, at 2. According to Servotronics, the engine "was manufactured by Rolls-Royce and installed on the right side of a new Boeing 787-9 Dreamliner aircraft." *Ibid.* Servotronics alleges that the proposed deponents—Terrance Shifley, Alan Sharkshnas, and Scott Walston—were Boeing employees who were involved in the incident and subsequent investigation. *Id.* at 2–3.

Servotronics supplied a component of the engine to Rolls-Royce pursuant to an agreement between them. *See* D.E. 1-1, at 3. As Servotronics acknowledged, "[d]ue to a manufacturing error in the [part], an unwanted wafer of metal became lodged in it," ultimately resulting in a "tail pipe fire in the Engine." *Ibid.* "Boeing sought compensation for all alleged resulting damages from Rolls-Royce," which settled the claim along with its insurers. *Ibid.*

Rolls-Royce sought reimbursement from Servotronics, which Servotronics refused to provide. D.E. 1-1, at 3. The agreement between Servotronics and Rolls-Royce provides that, if they cannot resolve a given dispute by negotiation or mediation, "[t]he dispute shall be referred to and finally resolved by arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbitrators." *Ibid.*; *see also* J.A. 18 (same). Following unsuccessful negotiations between Servotronics

**EXHIBIT 2**

and Rolls-Royce, they "agreed to arbitration in London rather than Birmingham, England, as a matter of convenience." D.E. 1-1, at 4.

On October 26, 2018, purporting to invoke Section 1782(a), Servotronics applied *ex parte* for three subpoenas—directed to Messrs. Shifley, Sharkshnas, and Walston—in the United States District Court for the District of South Carolina. *See* J.A. 3; *see also id.* at 8–16 (proposed subpoenas). That same day, Servotronics also filed an *ex parte* application in the United States District Court for the Northern District of Illinois seeking authority to serve broad document discovery on Boeing. *See* D.E. 7 Ex. A, *In re Servotronics, Inc.*, No. 1:18-cv-07187 (N.D. Ill. Oct. 26, 2018); *see also* Br. 12 n.3. When these applications were filed, the arbitral panel had not yet been fully composed; the third and final arbitrator was selected in "early January 2019." Br. 41.

Servotronics's *ex parte* application in the court below, like the one in Illinois, was not served on Boeing or Rolls-Royce. Rather, the memorandum in support of the application asserted that "the Application should be granted and [the district court] should issue an Order directing SERVOTRONICS to serve the proffered Subpoenas," or "[i]n the alternative" that the district court "should issue an Order to Show Cause why the Subpoenas should not issue." D.E. 1-1, at 13–14.

Rejecting both of those proposed options, the district court concluded as a matter of law that the application was inconsistent with Section 1782(a). *See* J.A.

EXHIBIT 2

246–55.  As the district court noted, Servotronics's application raised a threshold question: "whether the private arbitral body conducting the arbitration qualifies as a 'tribunal' for the purposes of § 1782."  J.A. 4.  Noting that "[t]he Second and Fifth Circuits have held that private arbitral bodies do not fall within the ambit of § 1782," J.A. 4, the district court canvassed the relevant case law and agreed that "the private arbitral body conducting the arbitration here does not fall within § 1782's definition of 'tribunal,'" and thus that "the court does not have the authority under § 1782 to grant SERVOTRONICS's application," J.A. 9.  Servotronics appealed, *see id.* at 256, and this Court granted Boeing's and Rolls-Royce's motions to intervene, *see* Order (4th Cir. Jan. 14, 2019).

## SUMMARY OF ARGUMENT

All relevant indicia of statutory meaning demonstrate that a private, contract-based arbitration is not a "foreign or international tribunal" for purposes of 28 U.S.C. § 1782(a).  That is what the Second and Fifth Circuits held in *National Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999), and *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880 (5th Cir. 1999), and the district court correctly relied on those decisions in concluding that Section 1782(a) does not permit the discovery Servotronics requested for use in a CIArb arbitration.

**I.**    The text of Section 1782(a) excludes private arbitration from the statute's ambit.  In 1964, when Congress amended Section 1782(a) to include the phrase

"foreign or international tribunal," that phrase would have been commonly understood as referring to an entity that exercised government-conferred authority. That follows from contemporaneous dictionary definitions, Congress's use of the phrase "*foreign or international* tribunal" (emphasis added), neighboring statutory language, and the meaning of similar terms elsewhere in the United States Code. This construction is confirmed by the origin of the term "international tribunal," which was drawn from predecessor provisions that were limited to intergovernmental bodies.

Construing Section 1782(a) to exclude private arbitration also avoids a serious conflict with the FAA and the pro-arbitration policies embodied in that act. The discovery authorized by Section 1782(a) is much broader than the FAA contemplates. At a minimum, therefore, applying Section 1782(a) to "foreign or international" private arbitration would lead to the bizarre result that participants in such arbitrations could obtain far broader discovery in the United States than participants in comparable domestic arbitrations. Moreover, Section 1782(a) would displace the FAA in the considerable subset of arbitrations subject to both statutes, without any hint of congressional intent to accomplish that result. This outcome would undermine the strong federal policy favoring arbitration.

Section 1782(a)'s legislative history further confirms that a private arbitration is not a "foreign or international tribunal" for purposes of the statute.  That legislative history shows that Congress amended Section 1782(a) to expand statutory assistance beyond foreign courts to include other types of foreign, quasi-judicial bodies exercising governmental authority.  By contrast, the statute's legislative history does not contain any references to private dispute-resolution procedures such as arbitration, strongly suggesting that Congress did not intend to encompass them.

**II.**   Servotronics's arguments for construing Section 1782(a) to authorize discovery for use in private, contract-based arbitration are unavailing.  Servotronics relies on current definitions of the word "tribunal" that do not represent the most natural reading of the term in context.  Servotronics also ignores the rest of the statutory text, attempting to artificially parse the word "tribunal" in isolation.  And Servortonics's position requires assuming that Congress intended the 1964 amendment to dramatically expand the scope of discovery available under Section 1782(a) to include private arbitrations without any evidence of that intent.

Servotronics repeatedly relies on the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  But, as Servotronics concedes, *Intel* did not involve a private arbitration proceeding.  Nor did the Supreme Court discuss—let alone purport to overrule—the Second and Fifth Circuit decisions holding that Section 1782(a) does not apply to private arbitrations.  Moreover, the

**EXHIBIT 2**

Court's reasoning in *Intel* is fully consistent with construing Section 1782(a) to exclude private arbitral bodies such as the CIArb but to include judicial *and* quasi-judicial bodies exercising governmental authority.

    **III.**    If this Court were to agree with Servotronics that the arbitration here is a "foreign or international tribunal," it should decline Servotronics's request to apply Section 1782(a)'s discretionary factors in the first instance. The application of those factors is committed to the district court's discretion, and this case does not fall within any exception to the rule that the district court should be provided an opportunity to exercise its discretion before this Court's review.

## STANDARD OF REVIEW

    This Court "review[s] the district court's interpretation of 28 U.S.C. § 1782 *de novo*." *Nat'l Broad. Co. v. Bear Stears & Co.*, 165 F.3d 184, 186 (2d Cir. 1999); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881 (5th Cir. 1999) ("Review of the scope of § 1782 is *de novo*."); *see also*, *e.g.*, *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009) ("a question of statutory interpretation" is "a quintessential question of law, which we review *de novo*").

## ARGUMENT

**I.**    **The District Court Correctly Determined That Section 1782(a) Cannot Be Used To Obtain Evidence For Private, Contract-Based Arbitrations.**

    Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to

produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). According to Servotronics, "[a] private arbitral tribunal proceeding in accordance with CIArb Rules is a 'tribunal' in both the legal and everyday sense of the word." Br. 21. This formulation of the argument—that a "tribunal" is a "tribunal"—begs the question. Rather, the text, context, purpose, and legislative history of Section 1782(a) make clear that a private, contract-based arbitration is not a statutory "tribunal."

The only two courts of appeals to decide this issue have concluded that private arbitrations fall outside the scope of Section 1782(a). In *National Broadcasting Co. v. Bear Stearns & Co.*, the Second Circuit held, "based upon an analysis of the text and legislative history of § 1782, that Congress did not intend for that statute to apply to an arbitral body established by private parties." 165 F.3d 184, 191 (2d Cir. 1999). And in *Republic of Kazakhstan v. Biedermann International*, the Fifth Circuit examined the relevant sources of statutory meaning and agreed with the Second Circuit "that § 1782 does not apply to private international arbitrations." 168 F.3d 880, 881 (5th Cir. 1999). The Second and Fifth Circuits' decisions were (and remain) soundly reasoned, *see, e.g., El Paso Corp. v. Comision Ejecutiva Hidroelectrica del Rio Lempa*, 341 F. App'x 31, 33–34 (5th Cir. 2009) (unpub.) (reaffirming *Biedermann*), and the district court correctly relied on them in concluding that "the

13

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 23 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 23 of 60

EXHIBIT 2

private arbitral body conducting the arbitration here does not fall within § 1782's definition of 'tribunal,'" J.A. 254.

The Second and Fifth Circuits interpreted the statutory phrase "foreign or international tribunal" to mean an adjudicatory body that derives its authority from a foreign government or from a group of governments. *See Nat'l Broad. Co.*, 165 F.3d at 190 (statute "cover[s] governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies"); *Biedermann*, 168 F.3d at 882 (statute "facilitate[s] discovery for international government-sanctioned tribunals"). Under this construction, as the district court noted, a "state-sponsored arbitration" might constitute a "tribunal" under Section 1782(a). J.A. 247. By contrast, a private arbitral body—such as the CIArb in the dispute between Servotronics and Rolls-Royce—derives its authority not from the government, but from "the parties' agreement to forego the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).[1] An arbitration before such a body therefore is not a "proceeding

---

[1] *See also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) ("parties are generally free to structure their arbitration agreements as they see fit" and may "specify by contract the rules under which that arbitration will be conducted"); *Biedermann*, 168 F.3d at 883 ("[A]s a creature of contract, both the substance and procedure for arbitration can be agreed upon in advance."). Servotronics and Rolls-Royce entered into precisely such an agreement here. *See* J.A. 18 (noting agreement that "[t]he dispute shall be referred to and finally resolved by arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbitrators"); *see also id.* at 25 (CIArb is a "U.K.-based membership charity").

in a foreign or international tribunal" under Section 1782(a), and a request for discovery to be used in such a private arbitration does not qualify for judicial assistance under the statute. *See*, *e.g.*, *In re Dubey*, 949 F. Supp. 2d 990, 994 (C.D. Cal. 2013) (distinguishing between "purely private arbitrations established by private contract and state-sponsored arbitral bodies"); *In re Norfolk S. Corp. Arbitration*, 626 F. Supp. 2d 882, 885 (N.D. Ill. 2009) (same).

Because this construction of "foreign or international tribunal" as excluding private, contract-based arbitration is compelled by the statutory text, as well as all other relevant indicia of statutory meaning, the district court's order denying Servotronics's application under Section 1782(a) should be affirmed.

## A. Section 1782(a)'s Text, Context, Purpose, And Legislative History Establish That Private Arbitral Panels Are Not "Foreign Or International Tribunal[s]."

"As in all statutory construction cases," this Court should "begin [its] examination of § 1782 with the language of the statute." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004) (citation and alteration omitted). The statutory phrase at issue here—"foreign or international tribunal," 28 U.S.C. § 1782(a)—is properly understood as referring to a body that derives its authority from the government, and not a panel of arbitrators convened by private contractual agreement. This Court should join the Second and Fifth Circuits in holding that "an arbitral body established by private parties" falls outside the scope of Section

**EXHIBIT 2**

1782(a).  *Nat'l Broad. Co.*, 165 F.3d at 191; *see also Biedermann Int'l*, 168 F.3d at 883 (phrase "was not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations").

> ### 1.    To Qualify As A "Foreign Or International Tribunal," An Entity Must Exercise Government-Conferred Authority.

As the Supreme Court has instructed, "words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute."  *Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) (omission in original; citation omitted).  In this case, the critical language of Section 1782(a) that requires interpretation is "foreign or international tribunal."

a.    In 1964, when Congress amended Section 1782(a) to include that phrase, it would have been commonly understood as referring to an entity exercising authority conferred by a government or group of governments.  At the time, the word "tribunal" was principally defined as either the seat of a judge or as an adjudicatory body acting with governmental authority.  *See*, *e.g.*, Webster's New International Dictionary of the English Language 2707 (2d ed. 1955) (Add. 1a) (defining "tribunal" as "the seat of a judge" or "a court or forum of justice"); Black's Law Dictionary 1677 (4th ed. 1951) (Add. 1a) ("[t]he seat of a judge" or "[t]he whole body of judges who compose a jurisdiction; a judicial court").  Applying that definition, the phrase would have excluded private arbitration, which derives its authority from the contractual consent of the parties and is not imbued with judicial powers.  *See*, *e.g.*, *In*

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 26 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 26 of 60

EXHIBIT 2

re *Medway Power Ltd.*, 985 F. Supp. 402, 403 (S.D.N.Y. 1997) ("the ordinary understanding of 'tribunal' does not encompass private arbitrations"); *see also* Brief for United States as *Amicus Curiae* at 14, *Intel*, 542 U.S. 241 (2004) (No. 02-572) ("[T]he term 'tribunal' in Section 1782 is not limited to courts but includes, more broadly, governmental bodies that exercise adjudicative functions.").

That Congress had this definition in mind is confirmed by Section 1782(a)'s specific reference to a "*foreign or international* tribunal," 28 U.S.C. § 1782(a) (emphasis added), because those terms are best understood as separate references to different governmental sources of authority. A "foreign . . . tribunal" is an entity that derives its authority from a single government; an "international tribunal" is an entity that derives its authority from a group of governments. *See Nat'l Broad Co.*, 165 F.3d at 190 ("'an international tribunal owes both its existence and its powers to an international agreement'" (quoting Hans Smit, Assistance Rendered by the United States in Proceedings Before International Tribunals, 62 Colum. L. Rev. 1264, 1267 (1962))). Together, the two categories cover the gamut of government-empowered adjudicatory entities—and exclude dispute-resolution bodies, such as private arbitral panels, that derive their authority from a source other than the government.

That distinction is reflected in the wording of other, nearly contemporaneous legislation.  For example, the Government in the Sunshine Act specifically distinguishes between "an action in a foreign court or international tribunal" and "an arbitration."  Pub. L. 94-409, § 3(a), 90 Stat. 1241, 1242 (1976), *codified at* 5 U.S.C. § 552b(c)(10); *see also*, *e.g.*, Deep Seabed Hard Mineral Resources Act, Pub. L. 96-283, § 102(b)(4), 94 Stat. 553, 559 (1980) (directing the Secretary of State to pursue peaceful resolution of controversies over seabed use through "negotiation, conciliation, arbitration, or resort to agreed tribunals"), *codified at* 30 U.S.C. § 1412(b)(4).  And "[r]eferences in the United States Code to 'arbitral tribunals' almost uniformly concern an adjunct of a foreign government or international agency," *Biedermann Int'l*, 168 F.3d at 882 & n.6 (citing 16 U.S.C. § 973n, 22 U.S.C. § 290k-11(a), and 22 U.S.C. § 1650(a)), rather than privately authorized arbitral panels.  Conversely, when the United States Code does reference private arbitration—for example, in the FAA—it does not use the term "tribunal."  *See*, *e.g.*, 9 U.S.C. § 7 (referring to the "arbitrator or arbitrators").  Notably, Servotronics's brief does not identify a single example to the contrary on any of these points.  *See* Br. 27–28.

Construing the phrase "foreign or international tribunal" as limited to governmentally authorized entities also gives effect to the entire text of Section 1782(a).  As the Second Circuit noted, an "understanding of the term 'foreign or international tribunal'" that includes "all bodies with adjudicatory functions"—the definition that

18

Servotronics advances here, *see* Br. 21—"contains no discernable limits and could theoretically encompass even the most informal, unorthodox private dispute resolution proceedings." *Nat'l Broad Co.*, 165 F.3d at 191 n.9 (citation omitted). If Congress had intended that scope for Section 1782(a), it easily could have said so, omitting the word "tribunal" and revising the statute to authorize discovery "for use in a foreign or international *proceeding*." In this respect, Servotronics's argument would render the word "tribunal" superfluous. But "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (alteration in original; citation omitted); *see also Hedin v. Thompson*, 355 F.3d 746, 750 (4th Cir. 2004) ("A court must attempt to interpret a statute so as to give each word meaning and to avoid creating surplusage."). Giving effect to Congress's inclusion of both "proceeding" and "tribunal" in Section 1782(a) requires construing the statute as limited to entities exercising powers conferred by government.

This understanding of "foreign or international tribunal" draws additional support from neighboring language in Section 1782(a). Under that provision, a district court issuing a discovery order "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of *the foreign country or the international tribunal*, for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782(a) (emphasis added). This statutory

language presumes that "the foreign country" will have prescribed the "practice and procedure" for any "foreign . . . tribunal." That is true with respect to governmental entities—that is, where the foreign country has created the entity—but not for contract-based private arbitration, the rules of which are established by the arbitral body (a private entity) and the parties themselves. Construing the phrase "foreign or international tribunal" as limited to state-empowered entities is therefore necessary to ensure internal consistency within Section 1782(a) and to avoid conflict between different parts of the same statutory provision. *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) ("our task is to fit, if possible, all parts into an harmonious whole" (citation omitted)).

      **b.**    This straightforward reading of the statutory text is confirmed by the origin of the term "international tribunal" in Section 1782(a). *See Vermilya-Brown Co. v. Connell*, 335 U.S. 377, 386 (1948) ("meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed" (citation omitted)). Because Congress drew that phrase from a predecessor statutory provision that unquestionably "applied only to intergovernmental tribunals," that same meaning should carry over into Section 1782(a). *Nat'l Broad. Co.*, 165 F.3d at 189.

As described above, Congress has progressively expanded the regime governing U.S. judicial assistance to foreign tribunals in gathering evidence. *See supra* at 5–6.  In the early 1930s, Congress enacted 22 U.S.C. §§ 270–270g, "which authorized commissioners or members of international tribunals [involving the United States] to administer oaths, to subpoena witnesses or records, and to charge contempt." *Nat'l Broad. Co.*, 165 F.3d at 189.  In 1948, Congress enacted the original version of Section 1782, which "allowed district courts to designate persons to preside at depositions 'to be used in *any civil action* pending in any court in a foreign country with which the United States is at peace.'" *Intel*, 542 U.S. at 248 (quoting Act of June 25, 1948, Pub. L. No. 80-773, ch. 646, § 1782, 62 Stat. 869, 949) (emphasis in original).  Less than one year later, in 1949, Congress replaced "'civil action'" with "'judicial proceeding.'" *Ibid.* (quoting Act of May 24, 1949, Pub. L. No. 81-72, ch. 139, § 93, 63 Stat. 89, 103).  And then, in 1964, Congress revised Section 1782 again, "delet[ing] the words 'in any judicial proceeding pending in any court in a foreign country,' and replac[ing] them with the phrase 'in a proceeding in a foreign or international tribunal.'" *Intel*, 542 U.S. at 248–49 (citation and emphasis omitted).  Simultaneous with this change to Section 1782, the 1964 amendment also repealed Sections 270–270g.  *See* Act of Oct. 3, 1964, Pub. L. 88-619, § 3, 78 Stat. 995; *see also Nat'l Broad. Co.*, 165 F.3d at 189–90.

**EXHIBIT 2**

As this history shows, "[t]he term 'international tribunal' derives directly from §§ 270–270g." *Nat'l Broad. Co.*, 165 F.3d at 189.  That statute "applied only to international tribunals 'established pursuant to an agreement between the United States and any foreign government or governments.'"  *Id.* at 189–90 (quoting Smit, Assistance Rendered, 62 Colum. L. Rev. at 1269).  The revised version of Section 1782(a) effectively "broaden[ed] the scope of the repealed 22 U.S.C. §§ 270–270g by extending the reach of the surviving statute to intergovernmental tribunals not involving the United States." *Nat'l Broad. Co.*, 165 F.3d at 190.

The 1964 amendment thus represented a merger of two different statutes providing for judicial assistance to foreign adjudicatory bodies: the previous version of Section 1782, which applied to evidence for use in foreign courts, and Sections 270–270g, which applied to evidence for use in international tribunals.  *See Beider-mann*, 168 F.3d at 882 ("The new version of § 1782 was drafted to meld its prede-cessor with other statutes which facilitated discovery for international government-sanctioned tribunals.").  Both statutes, however, addressed only government-em-powered bodies—not private arbitral panels.

As the Second Circuit has explained, "there is no indication that Congress intended for the new provisions [in Section 1782(a)] to reach private international tribunals, which lay far beyond the realm" of 22 U.S.C. §§ 270–270g. *Nat'l Broad*

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 32 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 32 of 60

EXHIBIT 2

*Co.*, 165 F.3d at 190. And absent any such indication, the term "international tribunal" should be construed consistently with its established meaning in 1964—as an entity created by intergovernmental agreement. *Cf. Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) ("substantial relation between the two programs presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning" (citation omitted)).

> ### 2. Construing "Foreign Or International Tribunal" To Exclude Private Arbitration Avoids A Serious Conflict With The Federal Arbitration Act.

Construing "foreign or international tribunal" in Section 1782(a) as excluding private arbitration is also necessary to avoid a serious conflict with the FAA and the pro-arbitration policies it embodies. *See Nat'l Broad. Co.*, 165 F.3d at 190–91; *Biedermann Int'l*, 168 F.3d at 882–83. The Supreme Court has recently reiterated, in a case involving a purported conflict between the FAA and another federal statute, a federal court's "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1618 (2018). But interpreting Section 1782(a) to authorize judicial assistance in connection with private arbitration proceedings would create a conflict with the FAA by authorizing discovery that the FAA does not contemplate.

EXHIBIT 2

Section 7 of the FAA authorizes arbitrators to "subpoena witnesses and direct those witnesses to bring material documentary evidence to an arbitral hearing; if witnesses fail to comply, the district court for the district in which the arbitrators are sitting may compel compliance with such subpoenas." *Nat'l Broad. Co.*, 165 F.3d at 187 (citing 9 U.S.C. § 7). Discovery under the FAA is more limited than discovery under Section 1782(a) in three ways. *First*, "[w]hile an arbitration panel may subpoena documents or witnesses, the litigating parties have no comparable privilege." *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980); *see also Nat'l Broad. Co.*, 165 F.3d at 187 ("the *parties* to an arbitration may not employ [§ 7] to subpoena documents or witnesses" (emphasis in original)).[2] *Second*, Section 7 "explicitly confers enforcement authority only upon the 'district court for the district in which such arbitrators, or a majority of them, are sitting.'" *Nat'l Broad. Co.*, 165 F.3d at 188 (quoting 9 U.S.C. § 7). *Third*, "[n]owhere does the FAA grant an arbitrator the authority to order non-parties to appear at depositions, or the authority to demand that non-parties provide the litigating parties with documents during prehearing discovery." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275 (4th Cir. 1999).

---

[2] The Court has suggested that a limited exception to this rule might apply in "unusual circumstances," allowing a party to "petition the district court to compel pre-arbitration discovery upon a showing of special need or hardship." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 276 (4th Cir. 1999) (discussing *Burton*, 614 F.3d at 391).

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 34 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 34 of 60

EXHIBIT 2

Construing Section 1782(a) as applying to private arbitration would allow parties as a matter of course to obtain much broader discovery than they could under the FAA, particularly from third parties. *See Nat'l Broad. Co.*, 165 F.3d at 191 ("[S]uch broad discovery in proceedings before 'foreign or international' private arbitrators would stand in stark contrast to the limited evidence gathering provided in 9 U.S.C. § 7 for proceedings before domestic arbitration panels."). At minimum, that "inconsistency . . . would be devoid of principle," and "would create an entirely new category of disputes concerning the appointment of arbitrators and the characterization of arbitral panels as domestic, foreign, or international." *Ibid.*; *see also Biedermann*, 168 F.3d at 883 ("It is not likely that Congress would have chosen to authorize federal courts to assure broader discovery in aid of foreign private arbitration than is afforded its domestic dispute-resolution counterpart.").[3]

Moreover, such a construction of Section 1782(a) would operate to displace the FAA in the considerable subset of "foreign or international" arbitrations that are subject to the FAA. *See Nat'l Broad. Co.*, 165 F.3d at 187 (noting that the FAA

---

[3] The Central District of California's decision in *In re Dubey* illustrates this sort of dispute over the proper characterization of an arbitral panel. 949 F. Supp. 2d at 995 (party contended that AAA arbitration "largely consist[ing] of U.S. parties" was nonetheless "international" under Section 1782(a) because "the arbitration is international in nature and conducted pursuant to the International Dispute Resolution Procedures"); *see also Nat'l Broad. Co.*, 165 F.3d at 191 n.9 (noting possibility that, if Section 1782(a) were applied to private arbitration, it might be available to "parties in a domestic arbitration" if they "simply appointed one foreign arbitrator to an otherwise entirely domestic panel dealing with a purely domestic dispute").

**EXHIBIT 2**

"applies to private commercial arbitration conducted in this country" and "also to arbitrations in certain foreign countries by virtue of legislation implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Inter-American Convention on International Commercial Arbitration"); *see also* 9 U.S.C. §§ 202, 302 (applying Conventions to broad spectrum of arbitrations, including some based in the United States). Federal statutes should be read to create such a conflict with the FAA only if there is "a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp.*, 138 S. Ct. at 1624 (citation omitted). Section 1782(a), however, does not "even hint at a wish to displace the Arbitration Act—let alone accomplish that much clearly and manifestly, as [Supreme Court precedent] demand[s]." 138 S. Ct. at 1624.

This conflict between Section 1782(a) and the FAA is no mere technicality, but rather would significantly undermine the strong, statutorily embodied federal policy favoring arbitration. The Supreme Court has emphasized the importance of avoiding interpretations of federal law that would "'sacrific[e] the principal advantage of arbitration—its informality—and mak[e] the process slower, more costly, and more likely to generate procedural morass than final judgment.'" *Epic Sys. Corp.*, 138 S. Ct. at 1646 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S.

333, 348 (2011)) (alterations in original).  Applying Section 1782(a) to private arbitration would have exactly that deleterious effect, as this case amply demonstrates, with collateral discovery disputes now proceeding in two U.S. jurisdictions.

"A hallmark of arbitration—and a necessary precursor to its efficient operation—is a limited discovery process." *COMSAT Corp.*, 190 F.3d at 276; *see also Nat'l Broad. Co.*, 165 F.3d at 190–91 ("The popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure."). "If the parties to a private international arbitration make no provision for some degree of consensual discovery *inter se* in their agreement to arbitrate," then "the arbitrators control discovery, and neither party is deprived of its bargained-for efficient process by the other party's tactical use of discovery devices." *Nat'l Broad. Co.*, 165 F.3d at 191.  That is what Servotronics and Rolls-Royce contracted for here: arbitrator-controlled discovery under the CIArb Rules.  *See* J.A. 56 (CIArb Rules art. 27(3), which sets forth the arbitral panel's authority to compel evidence).  But these contractual limitations on discovery "would be overridden by the application of § 1782" to this dispute. *Nat'l Broad. Co.*, 165 F.3d at 191.  And allowing discovery under Section 1782(a) against third-party Boeing "would undermine one of the

significant advantages of arbitration, and thus arguably conflict with the strong fed-

eral policy favoring arbitration as an alternative means of dispute resolution." *Ibid.*;

*see also Biedermann*, 168 F.3d at 883 ("Empowering arbitrators or, worse, the par-

ties, in private international disputes to seek ancillary discovery through the federal

courts does not benefit the arbitration process.").

### 3. Section 1782(a)'s Legislative History Confirms That The Statute Does Not Authorize Discovery For Use In Private Arbitrations.

Section 1782(a)'s legislative history further confirms that a private arbitration

is not a "foreign or international tribunal" for purposes of the statute. That "legisla-

tive history reveals that when Congress in 1964 enacted the modern version of

§ 1782, it intended to cover governmental or intergovernmental arbitral tribunals

and conventional courts and other state-sponsored adjudicatory bodies." *Nat'l*

*Broad. Co.*, 165 F.3d at 190.

The impetus for the 1964 amendment was Congress's desire—expressed in

enacted legislation—to improve "judicial assistance and cooperation between the

United States and *foreign countries*." Act of Sept. 2, 1958, Pub. L. No. 85–906, § 2,

72 Stat. 1743 (emphasis added). To that end, the Rules Commission was directed

to "improv[e]" the avenues for United States courts to assist "foreign courts and

quasi-judicial agencies." *Ibid.* This assistance was important, Congress empha-

sized, because it could encourage other countries to facilitate "the performance of

EXHIBIT 2

acts in foreign territory" when required by United States courts. *Ibid.*; *see also* Senate Report at 2, 1964 U.S.C.C.A.N. at 3783 ("It is hoped that the initiative taken by the United States in improving its procedures will invite *foreign countries* similarly to adjust their procedures." (emphasis added)); H.R. Rep. No. 88-1052 ("House Report"), at 4 (1963) (same).  From the outset, therefore, Congress was focused on assisting entities whose authority derived from the government.

This focus found expression in the legislation that Congress enacted in 1964. As an example of the type of proceeding that Congress had in mind when substituting the word "tribunal" for "court" in Section 1782(a), the Senate and House reports identify proceedings "before investigating magistrates in foreign countries."  Senate Report at 7, 1964 U.S.C.C.A.N. at 3788; House Report at 9.  More broadly, echoing the 1958 legislation that created the Rules Commission, the reports note:

> [T]he necessity for obtaining evidence in the United States may be as impelling in proceedings before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court.  Subsection (a) therefore provides the possibility of U.S. judicial assistance in connection with all such proceedings.

Senate Report at 8, 1964 U.S.C.C.A.N. at 3788; House Report at 9.  "[I]t is apparent in context that the authors of these reports had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state." *Nat'l Broad. Co.*, 165 F.3d at 189.

By contrast, "a significant congressional expansion of American judicial as-
sistance to international arbitral panels created exclusively by private parties would
not have been lightly undertaken by Congress without at least a mention of this leg-
islative intention." *Nat'l Broad. Co.*, 165 F.3d at 190. For that reason, "[t]he ab-
sence of any reference to private dispute resolution proceedings such as arbitration
strongly suggests that Congress did not consider them in drafting the statute." *Id.* at
189.

*       *       *

For all of these reasons, this Court should interpret "foreign or international
tribunal" in 28 U.S.C. § 1782(a) as encompassing only entities that exercise govern-
ment-conferred authority. The district court therefore determined correctly that a
private arbitral panel whose authority is contractually derived—such as the CIArb
here—is not a "foreign or international tribunal" under Section 1782(a).

### B.    Servotronics Is Incorrect That "Foreign Or International Tribu-nal" Is Properly Interpreted To Include A Private Arbitral Panel.

Arguing that the Second and Fifth Circuits "misconstrued Congressional in-
tent," Servotronics asks this Court to create a circuit split by holding that "[a] private
arbitral tribunal proceeding in accordance with CIArb Rules is a 'tribunal'" under

30

2:18-mc-00364-DCN   Date Filed 05/01/20   Entry Number 13-3   Page 40 of 60
USCA4 Appeal: 18-2454   Doc: 30   Filed: 02/22/2019   Pg: 40 of 60

EXHIBIT 2

Section 1782(a).  Br. 7, 21.[4]  Servotronics's arguments fail as a matter of statutory

construction and logic.

### 1.   Servotronics's Proposed Interpretation Contravenes Settled Principles Of Statutory Construction.

Servotronics urges this Court to adopt a broad definition of the statutory term

"tribunal" as "'[a] court or other adjudicatory body,'" under which "[a] tribunal may

be private, state-sponsored, domestic, foreign, or international so long as it is adju-

dicatory." Br. 21 (quoting Black's Law Dictionary 1737 (10th ed. 2014) (Add. 1a)).

Under this definition, Servotronics maintains, the term "'tribunal' includes both pri-

vate and state-sponsored arbitration panels." *Id.* at 23.  Servotronics's construction

of Section 1782(a) should be rejected for several reasons.

*First*, Servotronics's interpretation of "tribunal" is not the most natural read-

ing of that term in context.  The only sources that Servotronics identifies are the

current edition of *Black's Law Dictionary* and a number of judicial opinions that

refer in passing to arbitral panels as "tribunals." *See* Br. 21, 23–25.  The Supreme

Court, however, has "caution[ed]" against relying on modern definitions rather than

---

[4] As Servotronics notes, *see* Br. 8-9, an Eleventh Circuit panel initially concluded that a private arbitration in Ecuador could qualify as a "foreign or international tribunal" under Section 1782(a), *see In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987 (11th Cir. 2012).  The panel later withdrew that decision, however, and substituted a new opinion that expressly declined to answer the question presented here. *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d 1262, 1270 n.4 (11th Cir. 2014).

EXHIBIT 2

the text's "ordinary . . . meaning . . . at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (omissions in original; citation omitted). As discussed above, the contemporaneous dictionaries emphasize that the essential attributes of a "tribunal" include that the body derives its authority from a governmental source. *See supra* at 16–17.

In any event, the term's connection to governmental authority remains present even in more recent dictionaries.[5] The mere fact that "tribunal" is sometimes used colloquially in a broader sense does not mean that Congress intended to import that generic definition into a federal statute. Although "[a] feudal patriarch and a Bet Din"—a Jewish religious court— "may be referred to colloquially as tribunals," they "are not tribunals in a formal sense." *Medway Power Ltd.*, 985 F. Supp. at 403. Similarly, "[a] private arbitration generally has not been referred to as a tribunal." *Ibid.*

*Second*, Servotronics interprets "tribunal" as if that were the only word in the statute. But "a word is given more precise content by the neighboring words with

---

[5] *Black's Law Dictionary* defines "tribunal" not only as "[a] court of justice or other adjudicatory body," as Servotronics notes, but also "[t]he seat, bench, or place where a judge sits." Black's Law Dictionary 1737 (10th ed. 2014) (Add. 1a). And the current edition of *Webster's New International Dictionary* continues to define "tribunal" principally as "the seat of a judge or one acting as a judge" or "a court or forum of justice." Webster's New International Dictionary of the English Language 2441 (3d ed. 1981) (Add. 2a); *see also*, *e.g.*, American Heritage Dictionary of the English Language 1909 (3d ed. 1992) (Add. 1a) ("[a] seat or court of justice" or "[t]he bench on which a judge or other presiding officer sits in court").

EXHIBIT 2

which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008); *see also Bailey v. United States*, 516 U.S. 137, 145 (1995) ("The meaning of statutory language, plain or not, depends on context." (citation omitted)).  In this case, the relevant phrase is "foreign or international tribunal," 28 U.S.C. § 1782(a)—not "tribunal" alone—and in common usage that phrase refers to entities exercising authority conferred by a foreign government or group of governments.  *See supra* at 17. Servotronics's interpretation of "tribunal" also ignores the remainder of Section 1782(a), which makes clear that Congress envisioned that a "foreign country" would establish the "practice and procedure" for a "foreign tribunal"—an attribute that would not hold true for a private arbitral body.  *See supra* at 19–20.  Given these clear indicia of Section 1782(a)'s meaning, this Court should reject Servotronics's invitation to parse the statute artificially by reading the word "tribunal" in isolation.

*Third*, adopting Servotronics's position would require assuming that Congress intended the 1964 amendment to dramatically expand the scope of discovery available under Section 1782(a), without any evidence of that intent.  Congress does not "hide elephants in mouseholes," and thus it does not use "vague terms or ancillary provisions" to "alter the fundamental details" of a statutory scheme.  *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).  Yet that is precisely what Servotronics's argument presumes Congress did in 1964.

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 43 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 43 of 60

EXHIBIT 2

None of Section 1782(a)'s predecessor statutes had provided for discovery in support of private arbitration. *See*, *e.g.*, *Intel*, 542 U.S. at 247–49; *see also supra* at 20–23. Including such arbitration within the scope of the revised Section 1782(a) therefore would have represented a sharp break with past practice. "Significantly," the Second Circuit noted in *National Broadcasting Co.*, "there is no indication that Congress intended for the new provisions to reach private international tribunals, which lay far beyond the realm of the earlier statute." 165 F.3d at 190; *see also Biedermann*, 168 F.3d at 882 ("There is no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration."). This Court should reject Servotronics's attempt to interpret Section 1782(a) "so broadly that the statute effects a change in public policy which, if actually intended by Congress, very likely would have elicited at least some comment but did not do so." *Nat'l Broad. Co.*, 190 F.3d at 190 n.7.

### 2. Servotronics's Proposed Interpretation Is Not Supported By *Intel v. Advanced Micro Devices*.

Servotronics argues that its interpretation of Section 1782(a) is supported by the Supreme Court's decision in *Intel*, which held (among other things) that the Directorate-General of Competition ("DG-Competition") for the Commission of the European Communities ("Commission") was a "tribunal" within the meaning of Section 1782(a). *See* 542 U.S. at 257–58. This argument rests on a misreading of *Intel*.

EXHIBIT 2

**a.**    As Servotronics concedes, "*Intel* did not arise in connection with an arbitration proceeding." Br. 6. Rather, the Supreme Court considered whether a district court had authority to grant Section 1782(a) discovery to a complainant before the Commission, which sought documents for use in its antitrust complaint. 542 U.S. at 250. In answering this question affirmatively, the Supreme Court reached four primary conclusions:

> (1) A complainant before the European Commission . . . qualifies as an "interested person" within § 1782(a)'s compass; (2) the Commission is a § 1782(a) "tribunal" when it acts as a first-instance decisionmaker; (3) the "proceeding" for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be "pending" or "imminent"; and (4) § 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding.

*Id.* at 246–47.

Servotronics relies on the second of these conclusions—that the Commission was acting as a statutory "tribunal." *See* Br. 34–36. In analyzing the Commission's status, the Supreme Court discussed the significance of the 1964 amendment's addition of the phrase "a proceeding in a foreign or international tribunal" to Section 1782(a). *See Intel*, 542 U.S. at 258. According to the Court, "Congress understood that change to 'provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad].'" *Ibid.* (quoting Senate Report at 7–8, *reprinted in* 1964 U.S.C.C.A.N. at 3788) (alterations in original).

35

Considering the Commission's function in the European Communities' antitrust system, the Supreme Court held that it "ha[d] no warrant to exclude the European Commission, to the extent that it acts as a first-instance decisionmaker, from § 1782(a)'s ambit." 542 U.S. at 258.

**b.**    The Supreme Court's reasoning is fully consistent with construing Section 1782(a) to exclude private arbitral bodies, such as the CIArb. The European Commission is an "international" body, constituting "[t]he executive and administrative organ of the European Communities." *Intel*, 542 U.S. at 250 (citation omitted). Thus, when the Commission exercises the adjudicatory authority granted by the members of the European Communities—that is, as a "first-instance decisionmaker" for the European courts, *id.* at 258—it does so as an "international tribunal." That is true even though the Commission is not itself a court; as discussed above, *see supra* at 28–29, Section 1782(a) includes "administrative" or "quasi-judicial" proceedings, such as the Commission's review of DG-Competition recommendations.

Private arbitral entities, by contrast, do not share these attributes. They do not exercise governmental authority, and arbitrations before them are not "administrative" or "quasi-judicial" because they are a mechanism created by private agreement for parties to resolve their disputes *outside* of the government's adjudicatory processes. *See*, *e.g.*, *Comision Ejecutiva Hidroelectrica del Rio Lempa v. El Paso*

*Corp.*, 617 F. Supp. 2d 481, 485–86 (S.D. Tex. 2008) ("An arbitral tribunal exists as a parallel source of decision-making to, and is entirely separate from, the judiciary, which was not the case with the D-G Competition as the Court was at pains to point out in *Intel*."), *aff'd*, 341 F. App'x 31 (5th Cir. 2009); *Norfolk S. Corp.*, 626 F. Supp. 2d at 886 ("[P]rivate arbitrations are generally considered alternatives to, rather than precursors to, formal litigation.").

Servotronics maintains that the Supreme Court's reference to "'quasi-judicial' is not inconsistent with an intent to include private arbitration as a proceeding in a 'tribunal.'" Br. 31–32. But nothing in *Intel* suggests that the Court used "quasi-judicial" in such a sweeping manner. Rather, the Court's discussion of Section 1782(a)'s background and purpose—particularly its reference to Congress's directions in establishing the Rules Commission—confirms that "quasi-judicial" in context refers only to entities exercising governmental authority. *See Intel*, 542 U.S. at 257–58 (noting that Congress "instructed the Rules Commission to recommend procedural revisions for the rendering of assistance to foreign courts and *quasi-judicial agencies*" (citation omitted; emphasis in original)).

Contrary to Servotronics's suggestion, *see* Br. 30–31, this understanding of "quasi-judicial" is consistent with the Court's quotation from a law review article by Professor Hans Smit, who served as the Reporter to the Rules Commission. The

quoted excerpt states that "'[t]he term "tribunal" . . . includes investigating magis-
trates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as
conventional civil, commercial, criminal, and administrative courts.'" *Intel*, 542
U.S. at 258 (quoting Hans Smit, International Litigation Under the United States
Code, 65 Colum. L. Rev. 1015, 1026 n.71 (1965)).  The reference to "arbitral tribu-
nals" cannot reasonably be understood as referring to *private* arbitration, as the re-
mainder of the entities in the list unambiguously exercise governmental authority.
*See In re Operadora DB Mex. S.A. de C.V.*, No. 6:09-cv-383, 2009 WL 2423138, at
*11 n. 11 (M.D. Fla. Aug. 4, 2009); *see also Norfolk S. Corp.*, 626 F. Supp. 2d at
885 (interpreting "reference to 'arbitral tribunals' as including state-sponsored arbi-
tral bodies but excluding purely private arbitrations").  And the term "arbitral tribu-
nal" itself is typically used to refer only to arbitral bodies imbued with governmental
authority.  *See supra* at 18.  The quotation thus lends no weight to Servotronics's
proposed interpretation of Section 1782(a).  *See Operadora*, 2009 WL 2423138, at
*11 ("[T]he Supreme Court would not have expanded § 1782 to permit discovery
assistance in private arbitral proceedings and reversed [*National Broadcasting Co.*]
and *Biedermann*—without even acknowledging their existence—in a parenthetical
quotation supporting an unrelated proposition.").

2:18-mc-00364-DCN    Date Filed 05/01/20    Entry Number 13-3    Page 48 of 60
USCA4 Appeal: 18-2454    Doc: 30    Filed: 02/22/2019    Pg: 48 of 60

EXHIBIT 2

    **c.**     In arguing that the *Intel* decision "dispensed with categorical limits" on Section 1782(a) and requires a "liberal construction" of the statute, Br. 17, Servotronics overreads the opinion. Although the Supreme Court did "reject the categorical limitations Intel would place on the statute's reach," *Intel*, 542 U.S. at 255, as well as "the rules the dissent would inject into the statute," *id.* at 263 n.15, none of those related to whether an adjudicatory body must be government-authorized to qualify as a statutory "tribunal." And, in resolving the questions before it, the Supreme Court did not declare or even suggest that Section 1782 sweeps all foreign bodies exercising any type of dispute-resolution function—even where purely contractual in nature—within its purview. *See Norfolk S. Corp.*, 626 F. Supp. 2d at 885 ("[A]lthough the *Intel* Court acknowledged the ways in which Congress has progressively broadened the scope [of] § 1782, it stopped short of declaring that *any* foreign body exercising adjudicatory power falls within the purview of the statute."). Instead, the Court simply declined to impose limitations on Section 1782(a) that were not supported by the statutory text, context, purpose, or history.

    In this case, those indicia of statutory meaning demonstrate that Congress did not include private arbitrations within Section 1782(a)'s scope. As the district court correctly concluded, the Supreme Court's determination that the Commission acted as a "foreign or international tribunal" does "not alter the holdings in *Nat'l Broad. Co.* and [*Biedermann*] that private arbitrations are not within the purview of § 1782."

2:18-mc-00364-DCN   Date Filed 05/01/20   Entry Number 13-3   Page 49 of 60
USCA4 Appeal: 18-2454   Doc: 30   Filed: 02/22/2019   Pg: 49 of 60

EXHIBIT 2

J.A. 252; *see also*, *e.g., El Paso Corp.*, 341 Fed. App'x at 33–34 (rejecting argument that "*Biedermann* is no longer controlling in light of [*Intel*]" because "neither private arbitration" nor "the concerns raised in *Biedermann* regarding the application of § 1782 to private international arbitrations were at issue or considered in *Intel*").[6]

## II.   If This Court Were To Conclude That Section 1782(a) Applies To Private Arbitration, It Should Remand For The District Court To Evaluate Servotronics's Application In The First Instance.

"[A] district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Rather, the district court must "decid[e] whether to exercise its discretion to authorize discovery." Br. 38. "Having held that § 1782(a) authorizes, but does not require, discovery assistance," the Supreme Court in *Intel* "le[ft] it to the courts below to ensure an

---

[6] The "functional" analysis that Servotronics purports to glean from *Intel*, *see* Br. 17, 33–34, has no relevance here because the CIArb does not exercise government-conferred authority. *See In re Grupo Unidos por el Canal S.A.*, No. 14-mc-80277, 2015 WL 1815251, at *11 n.8 (N.D. Cal. Apr. 21, 2015) ("[n]othing in *Intel* requires a functional analysis where the proceeding is before a non-governmental entity"). And even if that functional analysis did apply, it would exclude the CIArb from the scope of Section 1782(a) because, as Servotronics admits in its brief, judicial review of a CIArb decision is limited to "substantive jurisdiction issues and serious irregularities." Br. 34; *see also* J.A. 60 (CIArb Rules art. 34(2): "By adopting these Rules, the parties waive their right to any form of appeal or recourse to a court or other judicial authority insofar as such waiver is valid under applicable law."). The mere availability of such a constrained level of judicial review cannot plausibly suffice to transform a private dispute-resolution body into a "foreign or international tribunal" for purposes of Section 1782(a). *See*, *e.g.*, *Norfolk S. Corp.*, 626 F. Supp. 2d at 886 (noting unavailability of "judicial review of the merits of the parties' dispute" in concluding that private arbitration was not a "foreign or international tribunal"); *Operadora*, 2009 WL 2423138, at *10 (same).

airing adequate to determine what, if any, assistance is appropriate." 542 U.S. at 266. This Court should follow the same approach if it concludes that the arbitration at issue here is a "foreign or international tribunal."

## A. The Decision Whether To Permit Discovery Under Section 1782(a) Is Committed To The District Court's Discretion.

The district court ruled as a matter of law that Servotronics did not establish the statutory prerequisites for discovery under Section 1782(a). As this Court has explained, "[a] failure to recognize the existence of authority to exercise discretion does not amount to its exercise." *Webb v. Bladen*, 480 F.2d 306, 310 (4th Cir. 1973). If a district court "conclude[s] mistakenly that it had no discretion," therefore, the "proper" approach on appeal is "to remand for the district court to exercise its discretion in the first instance." *Gordon v. Braxton*, 780 F.3d 196, 204 (4th Cir. 2015); *see also*, *e.g.*, *Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990) ("Though we might attempt to do so in the first instance, we do not think we should, but should instead remand to allow the district court to exercise its discretion on the matter.").

Applying this approach, the courts of appeals have repeatedly "decline[d] th[e] invitation" to "decide the application [under Section 1782(a)] ourselves." *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) (vacating and remanding); *see also*, *e.g.*, *In re Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992) (same); *In re Bayer*

*AG*, 146 F.3d 188, 196 (3d Cir. 1988) (same).  This Court, similarly, should decline to exercise discretion properly committed to the district court in the first instance.

**B.    This Case Does Not Fall Within Any Exception To The Remand Requirement For Discretionary Decisions.**

Citing *Singleton v. Wulff*, 428 U.S. 106 (1976), and *Turner v. City of Memphis*, 369 U.S. 350 (1962), Servotronics argues that an "appellate court can make first-instance adjudications when the issues can be resolved without doubt or to prevent injustice." Br. 38.  Servotronics does not and cannot seriously claim that "injustice might . . . result" (*Singleton*, 428 U.S. at 121 (citation omitted)) if the Court remanded this case for the district court to resolve its application in the first instance. The only other exception invoked by Servotronics applies where the "proper resolution" is clear "beyond any doubt." *Singleton*, 428 U.S. at 121.  Although the record is incomplete—neither Boeing nor Rolls-Royce even appeared below, let alone submitted evidence—the "proper resolution" of the inquiry does not favor Servotronics "beyond any doubt."  To the contrary, the four "factors" that *Intel* identified as potentially "bear[ing] consideration in ruling on a § 1782(a) request" suggest that the district court should deny Servotronics's application if the case were remanded. 542 U.S. at 264.

### 1. Section 1782(a) Discovery Is Unnecessary For Servotronics To Obtain Evidence From Boeing.

Section 1782(a) is not the only procedural avenue through which Servotronics potentially could obtain evidence from Boeing. *Cf. Intel*, 542 U.S. at 264 (noting that evidence from "nonparticipant[s] in the matter arising abroad" might be "unobtainable absent § 1782(a) aid"). Although Boeing is not a participant in the U.K. arbitration, it has a contractual obligation to Rolls-Royce to produce evidence relevant to the arbitration pursuant to a confidential agreement executed in March 2017. *See* D.E. 15, at 9–10, *In re Servotronics, Inc.*, No. 1:18-cv-07187 (N.D. Ill. Nov. 27, 2018); *see also* Br. 14. If Servotronics were to persuade the arbitral panel to order discovery from Rolls-Royce, Rolls-Royce could seek that discovery from Boeing pursuant to the agreement.

### 2. The CIArb Will Not Be Receptive To A United States Court Usurping The Panel's Authority.

A court presented with a Section 1782(a) request "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the [foreign tribunal] to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Article 27 of the CIArb Rules provides that matters of evidence—its relevance and whether it is required—will be determined by the panel. *See* J.A. 56. The full panel of arbitrators for this dispute has only recently been

assembled, and granting Servotronics's Section 1782(a) request now would deprive the panel of its ability to determine whether the requested evidence is necessary.

### 3. Servotronics Is Attempting To Circumvent Agreed-Upon Proof-Gathering Restrictions.

Servotronics's Section 1782(a) application "attempt[s] to circumvent [the] proof-gathering restrictions" imposed by its contract with Rolls-Royce and CIArb's Rules. *Intel*, 542 U.S. at 265. Servotronics agreed that "the dispute shall be referred to and finally resolved by arbitration . . . under the rules of the Chartered Institute of Arbitrators," J.A. 18, which in turn provide that "the arbitral tribunal may require the parties to produce documents, exhibits or other evidence," *id.* at 56. A federal court order for discovery under Section 1782(a) would bypass the parties' agreed-upon provisions for discovery and conflict directly with the CIArb's limited discovery procedures.

### 4. The Proposed Depositions And Other Discovery Would Impose A Significant Burden On Boeing.

The proposed depositions and other discovery sought by Servotronics in this matter and the companion matter pending in the Northern District of Illinois would impose a significant burden on Boeing. This concern is especially pronounced given the sensitive nature of the subject matter and the broad scope of the requests.

With respect to the depositions sought in this matter, Boeing has an obvious interest "in the services of employees . . . whose time and attention . . . will be diverted from its business for unnecessary and improper" depositions. *In re Grand Jury*, 619 F.2d 1022, 1026 (3d Cir. 1980). Two of the three individuals that Servotronics seeks to depose are current Boeing employees, and the remaining individual is a former employee. If Servotronics's application were granted, the current employees would be unable to fulfill their employment obligations to Boeing during the time that they were preparing for and ultimately participating in their depositions, and other Boeing personnel would be burdened with coordinating the deposition preparation and protecting Boeing's confidential and commercial interests.

Boeing would also face a significant burden with respect to the voluminous documents sought by Servotronics in the Northern District of Illinois. The subpoena in that matter requests production of 22 categories of sensitive Boeing documents, many of which are not even remotely relevant to the dispute between Rolls-Royce and Servotronics. *See* D.E. 12-1, at 3–5, *In re Servotronics, Inc.*, No. 1:18-cv-07187 (N.D. Ill. Nov. 20, 2018). If Boeing were required to produce these documents on Servotronics's theory that the CIArb arbitration is a "foreign or international tribunal," then the burden would hardly be limited to "these three depositions." Br. 42.

**EXHIBIT 2**

\*      \*      \*

Each of *Intel*'s discretionary factors counsels against permitting discovery under Section 1782(a) in this case.  At a minimum, the resolution of that discretionary analysis does not clearly favor Servotronics, and therefore a remand is required if the Court were to conclude that the arbitration between Servotronics and Rolls-Royce constitutes a "proceeding in a foreign or international tribunal."

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment below.

Dated:  February 22, 2019

Respectfully submitted,

  /s/ Henry L. Parr, Jr.
Henry L. Parr, Jr.
  *Counsel of Record*
  (signature by permission)
WYCHE, P.A.
44 E. Camperdown Way
Greenville, SC  29601
Telephone:  (864) 242-8209
Facsimile:   (864) 235-8900

Larry S. Kaplan
Matthew J. Obiala
KMA ZUCKERT LLC
200 W. Madison St., 16th Floor
Chicago, IL  60606
Telephone:  (312) 345-3000
Facsimile:   (312) 345-3119

*Counsel for Rolls-Royce PLC*

  /s/ Scott P. Martin
Scott P. Martin
  *Counsel of Record*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  (206) 359-3600
Facsimile:   (206) 359-4600

Bates McIntyre Larson
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL  60603
Telephone   (312) 324-8640
Facsimile:   (312) 324-9640

*Counsel for The Boeing Company*

**EXHIBIT 2**

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,804 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

 /s/ Scott P. Martin
Scott P. Martin
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:   (206) 359-3600
Facsimile:   (206) 359-4600

Dated:  February 22, 2019

**EXHIBIT 2**

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, an electronic copy of the foregoing

Brief for Appellees was filed with the Clerk of Court for the United States Court of

Appeals for the Fourth Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.

　　　　　　　　　　　　　　/s/ Scott P. Martin
　　　　　　　　　　　　　Scott P. Martin
　　　　　　　　　　　　　PERKINS COIE LLP
　　　　　　　　　　　　　1201 Third Avenue, Suite 4900
　　　　　　　　　　　　　Seattle, WA 98101
　　　　　　　　　　　　　Telephone:  (206) 359-3600
　　　　　　　　　　　　　Facsimile:   (206) 359-4600

**EXHIBIT 2**

# ADDENDUM

Dictionary Definitions Cited In
Brief for Intervenors-Appellees

**EXHIBIT 2**

**American Heritage Dictionary of the English Language 1909 (3d ed. 1992)**:

**tri•bu•nal** (trī-byoo′nəl, trĭ-) *n.* **1.** *Law*. **a.** A seat or court of justice. **b.** The bench on which a judge or other presiding officer sits in court. **2.** A committee or board appointed to adjudicate in a particular matter. **3.** Something that has the power to determine or judge: *the tribunal of public opinion*. [Middle English, from Old French, from Latin *tribūnal*, judge's platform, from *tribūnus*, tribune. See TRIBUNE[1].]

**Black's Law Dictionary 1677 (4th ed. 1951)**:

**TRIBUNAL**. The seat of a judge; the place where he administers justice. The whole body of judges who compose a jurisdiction; a judicial court; the jurisdiction which the judges exercise. See Foster v. Worcester, 16 Pick. (Mass.) 81.

**Roman Law**

An elevated seat occupied by the prætor, when he judged, or heard cases in form. Originally a kind of stage made of wood in the form of a square, and movable, but afterwards built of stone in the form of a semicircle. Adams, Rom. Ant. 132, 133.

**Black's Law Dictionary 1737 (10th ed. 2014)**:

**tribunal** (trī-**byoo**-nəl). (15c) **1.** A court of justice or other adjudicatory body. **2.** The seat, bench, or place where a judge sits.

**Webster's New International Dictionary of the English Language 2707 (2d ed. 1955)**:

**tri•bu′nal** (trī•bū′năl; n'l; trĭ-), *n.* [L., fr. *tribunus* a tribune who administered justice; cf. F. *tribunal*. See TRIBUNE OFFICER; cf. TRIBUNE elevated place.] **1.** A tribune (see 3d TRIBUNE); specif., the seat of a judge; the bench on which a judge and his associates sit for administering justice; a judgment seat.

[Before] His high *tribunal* thou and I appear.        *Gray*.

**2.** Hence, a court or forum of justice; a person or body of persons having authority to hear and decide disputes so as to bind the disputants; as,

the Supreme Court is the highest *tribunal* of the United States. Cf. HAGUE TRIBUNAL; REVOLUTIONARY TRIBUNAL.

**3.** That which decides or judges; something which determines or directs a judgment or course of action; as, the *tribunal* of public opinion or of one's own conscience.

## Webster's New International Dictionary of the English Language 2441 (3d ed. 1981):

**tribu•nal** \trī'byün°l, trə'b- *sometimes* 'tribyən-\ *n* -s [L, fr. *tribunus* Roman official, judge] **1 :** [2]TRIBUNE: as **a :** the seat of a judge or one acting as a judge **:** the bench on which a judge and his associates sit for administering justice **b :** JUDGMENT SEAT <appear before the august and holy ~ of God —J.N. Davies> **2 :** a court or forum of justice **:** a person or body of persons having authority to hear and decide disputes so as to bind the disputants <the Supreme Court is the highest ~ of the United States> **3 :** something that decides or judges **:** something that determines or directs a judgment or course of action <the ~ of events — George Santayana> <answerable to no ~ but that of their own judgment —Edith Wharton>