### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | No. 2:18-mc-00364-DCN |
| Application of SERVOTRONICS, INC. | ) | |
| for an Order Pursuant to 28 U.S.C. § 1782 | ) | |
| to Take Discovery for Use in a Foreign | ) | **ORDER** |
| Proceeding | ) | |
| _____ | ) | |

The following matter is before the court on applicant SERVOTRONICS, INC.'s ("Servotronics") Renewed Application for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in a Foreign Proceeding, ECF No. 13. On April 14, 2021, the court opted to hold the application in abeyance and stay proceedings pending the Supreme Court's resolution of <u>Servotronics, Inc. v. Rolls-Royce PLC</u>, No. 20-794, 2021 WL 1072280 (U.S. Mar. 22, 2021). The next day, the Fourth Circuit granted Servotronics' petition for a writ of mandamus and directed the court to "issue, without delay, the subpoenas to the witnesses within its jurisdiction[.]" ECF No. 46 at 2–3. Accordingly, the court lifts the stay, grants the application, and issues the requested subpoenas.

## I. BACKGROUND

This application arises out of an arbitration related to a fire at The Boeing Company's ("Boeing") facilities in Charleston, South Carolina. On January 16, 2016, Boeing was conducting testing on a plane when a tailpipe fire occurred in the plane's engine. The engine was manufactured by Rolls-Royce, PLC ("Rolls-Royce), and it contained a valve manufactured by Servotronics. During testing, a piece of metal became lodged in the valve, which affected the engine fuel flow. As a result, the Boeing ground crew began troubleshooting the engine, and subsequently the fire occurred. The fire

1

damaged both the engine and the plane. Boeing sought compensation for the damage from Rolls-Royce, and Rolls-Royce settled the claim. Then Rolls-Royce demanded indemnity from Servotronics, which Servotronics refused. Servotronics maintains that it is not liable for the fire or the damage caused by the fire and claims that fault lies with Rolls-Royce and Boeing.

Rolls-Royce and Servotronics are parties to a Long-term Agreement that requires the parties to resolve any disputes through arbitration in Birmingham, England. Rolls-Royce served a notice of arbitration on Servotronics seeking approximately $12.8 million. The parties have agreed to arbitrate in London instead of Birmingham as a matter of convenience. Servotronics now seeks testimony from two former and current Boeing employees to be used in the arbitration in support of Servotronics' defenses. The first employee, Alan Sharkshna ("Sharkshna"), participated in troubleshooting the plane's engine shortly before it caught fire. The second employee, Scott Walston ("Walston"), was the chairperson of the Boeing Incident Review Board that investigated the fire. Servotronics' application initially sought to depose a third Boeing employee, Terrance Shifley ("Shifley"), but, as the court explains below, Shifley is no longer included in the instant application.

Servotronics initially filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 granting it leave to serve subpoenas upon the witnesses on October 26, 2018. ECF No. 1. The court denied the application, finding that the U.K. private arbitral tribunal was not a "foreign tribunal" as defined by § 1782. ECF No. 4. Servotronics appealed the order, and Boeing and Rolls-Royce (collectively, "intervenors") intervened in the appeal. The Fourth Circuit reversed the court's order, finding that the arbitral

tribunal was a § 1782 "foreign tribunal," and remanded for further proceedings. Servotronics, Inc. v. Boeing Co., 954 F.3d 209, 216 (4th Cir. 2020). Concurrently with the instant proceedings before this court, Servotronics litigated another § 1782 application in the District of Illinois, where it sought to subpoena Boeing to produce certain documents for use in the same overseas arbitration. In re Servotronics, Inc., 2019 WL 9698535, (N.D. Ill. Apr. 22, 2019). The Northern District of Illinois initially granted the application but, upon reconsideration, vacated its order, denied the application, and quashed Servotronics' subpoena. Id. The district court there reached the same conclusion that this court reached prior to Fourth Circuit reversal—that a private arbitral tribunal is not a "foreign tribunal" under § 1782. Servotronics appealed, and the Seventh Circuit affirmed, holding that private arbitration tribunals are not "foreign or international tribunals" under § 1782 and making explicit its departure from the Fourth Circuit's recent interpretation. Servotronics, Inc. v. Rolls-Royce PLC, 975 F.3d 689, 691, 693–94 (7th Cir. 2020).

After the Fourth Circuit's remand, Servotronics filed its renewed application on May 1, 2020. ECF No. 13. Intervenors filed a joint response on May 29, 2020, ECF No. 20, and Servotronics replied on June 5, 2020, ECF No. 21. The court held a hearing on June 30, 2020 and subsequently entered an order instructing the parties to submit supplemental briefing on issues raised as the hearing. The parties filed their first batch of supplemental briefs on July 21, 2020. ECF Nos. 32–33. On August 24, 2020, the court ordered a second batch of supplemental briefing, requesting that the parties analyze the test employed by the Second Circuit in In re del Valle Ruiz to determine "whether the court has authority over" the witnesses. ECF No. 34; 939 F.3d 520 (2d Cir. 2019). The

parties timely complied.  ECF Nos. 35–36.  On December 2, 2020, Servotronics filed a

"modification" to its application, informing the court that one of the relevant witnesses,

Shifley, "now resides in the District of Minnesota" and withdrawing its application with

respect to Shifley.  ECF No. 37.  Intervenors responded, noting that Rolls Royce intends

to use "detailed witness statements" of the remaining two witnesses at the arbitration

hearing, meaning that Servotronics, "pursuant to the [arbitral panel's rules of procedure],

. . . will have the opportunity, if it elects, to examine Sharkshnas and Walston on any

relevant topic at the arbitration hearing."  ECF No. 38 at 1.

On December 7, 2020, Servotronics petitioned the Supreme Court of the United

States for a writ of certiorari, seeking review of the Seventh Circuit's decision.  On

January 6, 2021, Servotronics again supplemented its application, requesting that the

court issue an order so that Servotronics can "serve the subpoena(s), arrange the

depositions, and obtain the[] testimonies before the arbitration hearing," which is

scheduled for May 10, 2021.  ECF No. 39 at 1.  On February 23, 2021, intervenors also

filed another supplement, informing the court that they can no longer guarantee

Sharkshna's presence at the arbitration hearing.  ECF No. 40.  The next day, Servotronics

put in its two cents about the legal implications of Sharkshna's absence and informed the

court that it had requested a continuance of the arbitration hearing with the arbitration

panel.  ECF No. 41.  On March 11, 2021, Servotronics informed the court that the panel

denied its request for a continuance.  ECF No. 42.  The next day, intervenors reported to

this court the very same, adding that the arbitration panel ultimately found "that obtaining

any evidence from the various § 1782 proceedings is not a compelling reason for

adjournment."  ECF No. 43 at 1–2.

4

On April 14, 2021, this court issued an order holding Servotronics' application in abeyance and staying proceedings pending Supreme Court guidance on the current circuit split.  ECF No. 45.  The court reasoned that because "[t]he Supreme Court granted Servotronics' petition for certiorari on the issue, signaling that a binding resolution from the nation's highest court is on the horizon," "resolving Servotronics' renewed application without that guidance would be an imprudent waste of judicial resources." Id. at 8.  In considering Servotronics' petition for a writ of mandamus, the Fourth Circuit disagreed, holding that its "mandate remains in force until the Supreme Court rules otherwise."  ECF No. 46 at 3.  Accordingly, the Fourth Circuit issued the writ, directing this court "to issue, without delay, the subpoenas to the witnesses within its jurisdiction and take their testimony for use in the UK Arbitration."  Id. at 3–4.  Thus, this matter is ripe—and in the Fourth Circuit's opinion, overripe—for the court's review.

## II.  STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  The statute permits "[t]he district court of the district in which a person resides or is found" to order that person "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a). Notably, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  Intel, 542 U.S. at 263.  In determining whether to grant an application, "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in

international litigation in our federal courts and encouraging foreign countries by

example to provide similar means of assistance to our courts.'"  In re Application for an

Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir.

1997) (quoting In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir.

1992)).

### III.  DISCUSSION

Servotronics seeks leave to serve deposition subpoenas upon Walston and

Sharkshna.  The court first addresses its authority to issue subpoenas for these witnesses

and then determines whether it should exercise that authority.

### A.  The Court's Authority Over Witnesses

Section 1782 limits the reach of the court's authority to only those persons who

"reside[] or [are] found" in the court's district.  28 U.S.C. § 1782(a).  At the time

Servotronics initially filed its § 1782 application, Servotronics believed that Walston and

Sharkshna resided in South Carolina.  ECF No. 1-1 at 6–7.  However, upon Servotronics'

renewal of its application, intervenors drew the court's attention to the fact that Walston

lives in Washington.[1]  As such, the court instructed the parties to determine, to the best of

their abilities, where the witnesses live and how their locations affect the court's authority

under § 1782.

Intervenors filed the Declaration of David H. Koysza ("Koysza"), in which

Koysza attests that based on Boeing's Human Resources records, Sharkshna resides in

South Carolina and Walston resides in Washington.  ECF No. 32-4, Koysza Decl. ¶¶3–4.

---

[1] Intervenors also reported that Shifley had moved to Virginia.  As the court explained above, Servotronics has withdrawn its application with respect to Shifley.

Koyzsa also attests that Walston co-owns an investment property in South Carolina that he visits a couple of weeks each year, and that the Charleston County property records for that property lists Walston's mailing address in Washington.  Id. ¶ 5.  Servotronics submitted an affidavit of Ashley M. Henderson ("Henderson"), in which Henderson attests that her searches revealed an address for Sharkshna in South Carolina and a Title to Real Estate indicating that Walston owns property in South Carolina.  ECF No. 33-2, Henderson Decl. ¶ 2–4.  Accordingly, there is no dispute that Sharkshna resides in South Carolina and that Walston owns property in South Carolina.  Intervenors argue that the court only has authority over Sharkshna, while Servotronics argues that the court also has the authority under § 1782 to issue a subpoena for Walston based on principles of personal jurisdiction.

As an initial matter, the court clearly has authority to issue a subpoena upon Sharkshna under §1782.  There is no dispute that Sharkshna lives in South Carolina, meaning that he "resides or is found" in this state for the purposes of §1782, regardless of the jurisprudential gloss the court gives that phrase.  28 U.S.C § 1782(a).  Indeed, intervenors concede that the court has authority over Sharkshna, although they dispute whether the court's exercise of that authority would be prudent.  The question of the court's authority becomes more difficult with respect to Walston, who traveled to South Carolina in connection with Boeing's investigation into the fire, owns property in South Carolina, but seems to reside in Washington.  The Second Circuit has held "that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."  In re del Valle Ruiz, 939 F.3d at 528.  It appears that the Fourth Circuit has not considered this issue, but the court finds the Second Circuit's reasoning

persuasive.[2]  Therefore, the court must consider whether it could exercise personal

jurisdiction over Walston consistent with his rights under the Due Process clause to

determine its authority over him under § 1782.

    The due process test for personal jurisdiction involves two components: minimum

contacts and fairness.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286

(1980).  Under the minimum contacts test, a nonresident defendant must have certain

minimum contacts such that the suit does not offend "traditional notions of fair play and

substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment

Compensation and Placement, 326 U.S. 310, 316 (1945).  Due process is satisfied if the

court asserts personal jurisdiction over a defendant who "purposefully avails itself of the

privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S.

235, 253 (1958), such that it "should reasonably anticipate being haled into court there,"

World-Wide Volkswagen, 444 U.S. at 297.  After a showing of the defendant's

---

    [2] Intervenors urge the court to adopt a more restrictive test, interpreting
§ 1782(a)'s phrase "resides or is found [in]" to require physical presence.  ECF No. 35 at
2–6.  Ultimately, the court opts for the more expansive interpretation outlined by the
Second Circuit in In re del Valle Ruiz.  The court finds particularly convincing the
reasoning of Hans Smit, a legal professor who had a hand in drafting amendments to
§ 1782:

> The purpose of Section 1782 is to liberalize the assistance given to foreign
> and international tribunals.  The language defining its in personam reach
> must therefore be given a liberal construction commensurate with that
> purpose.  This means that a person should be regarded as residing in the
> district not only when it is domiciled there, but also when it is resident there
> in the sense of residing in the district for some not insignificant period of
> time.  Indeed, if the relationship of the person addressed to the district is
> such as to warrant the exercise of in personam authority under the due
> process clause, it should be regarded as "resident" there.

Hans Smit, American Assistance to Litigation in Foreign and International Tribunals:
Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 9–10
(1998) (internal footnotes omitted) (emphasis added).

purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy.  See id. at 292.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of or relate to those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable."  Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

The Second Circuit clarified several aspects of applying a specific jurisdiction analysis to § 1782.  First, it noted that the "forum state" is the district in which the district court sits.  In re del Valle Ruiz, 939 F.3d at 529 n.10.  The Second Circuit also explained that "[t]ranslated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery."  Id. at 530.  While acknowledging that "the use of terminology relating to causation is a somewhat awkward fit for discovery," the Second Circuit clarified that "the focus on the relationship between a § 1782 respondent's forum contacts and the resulting

availability of the evidence is a workable translation of the normal personal-jurisdiction framework." Id. at 530 n.12. The court agrees and analyzes accordingly.

The discovery material sought here—deposition testimony of Walston related to his investigation into the incident at Boeing—resulted from Walston's contacts with South Carolina. As the court discussed above, Walston came to South Carolina for around a week shortly after the fire for the purposes of heading up Boeing's official investigation into the incident. Servotronics has made clear that the testimony it seeks deals exclusively with that investigation, which Waltson conducted in South Carolina. Thus, the court finds that it has "specific personal jurisdiction" over Walston, at least for the purposes of ordering discovery under § 1782.[3]

### B. Servotronics' Application

Intervenors oppose Servotronics' application on two grounds. First, they argue that § 1782 does not permit "full and probing U.S.-style discovery," and by requesting to depose the three witnesses "in the style of Federal Rule 30," Servotronics is asking for just that. ECF No. 20 at 2. Second, intervenors argue that even if this type of discovery

---

[3] The Second Circuit seems to indicate in In re del Valle Ruiz that a court applying its test should also consider whether the court's exercise of authority is "fair" in the same way that a court might resolve that issue in the context of a personal jurisdiction inquiry. 939 F.3d at 529. But there, the Second Circuit did not reach that consideration. Grafting the "fairness" test for personal jurisdiction onto the analogous test for the court's authority under § 1782 is too awkward a fit to be much help in this analysis. For example, the court's consideration of "the interests of the forum state" or "the efficient resolution of controversies as between states" makes little sense in the context of § 1782. Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946 (4th Cir. 1994). The court declines to apply this second part of the traditional personal jurisdiction test, finding that fairness is an issue better resolved through application of the Intel factors, which are tailored to § 1782 and address more relevant concerns. The court considers those factors below.

were permitted by law, the discovery would be of no assistance to the U.K. arbitral panel

and the depositions would be unduly burdensome to Boeing.

### a.  Scope of Discovery Permitted by Law

Intervenors argue that the Fourth Circuit expressly forbade the type of expansive,

"U.S.-style" discovery that Servotronics now seeks.  They quote the following portion of

the Fourth Circuit's opinion:

> Section 1782(a) is not designed to authorize full discovery in connection
> with a foreign arbitration proceeding, or any other proceeding of a foreign
> tribunal.  Indeed, the provision does not even use the term "discovery."  It
> is much more limited.  The statute authorizes a U.S. district court to function
> in the stead of a foreign tribunal and, on behalf of that tribunal, to take
> statements and receive testimony and documents or other materials intended
> "for use" in the proceeding before the tribunal.  Moreover, the process must
> be administered in the discretion of the district court—not the parties, as is
> the case in discovery—to assist in the limited role of receiving evidence for
> use in the foreign tribunal proceeding.

Servotronics, 954 F.3d at 214–15.  Intervenors' reliance is misplaced.  The Fourth Circuit

made this point in response to Boeing's concern that § 1782(a) could be used to conduct

full discovery available under the Federal Rules of Civil Procedure in foreign

arbitrations.  The Fourth Circuit clarified that a court's assistance under § 1782(a) is

much narrower than discovery under the Federal Rules because the parties must receive

permission from the court to conduct any evidence gathering and they may only do so for

use in a proceeding.  Id. at 215.  In contrast, the Federal Rules allow parties to conduct

discovery freely and without first seeking leave from the court, and evidence may be

collected even if it is not used or admissible in the relevant proceeding.  In other words,

the Fourth Circuit's opinion does not prohibit Servotronics from what it seeks do to

here—take two depositions once the court grants its application.

Moreover, as Servotronics points out, § 1782 provides that any testimony permitted by the district court "shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782. Rule 30 permits depositions and Rule 45 permits the issuance of deposition subpoenas. Further, the Fourth Circuit's recent direction to this court is directly at odds with the intervenors' theory. In issuing the writ of mandamus, the Fourth Circuit directed the court to "issue the subpoenas . . . within its jurisdiction" without placing any procedural-based limitation on the court's authority to do so. ECF No. 16 at 2. Thus, Servotronics' requests for subpoenas falls comfortably within of the scope of assistance provided for by § 1782.

### b. Consideration of Discretionary Factors

The Supreme Court has identified four factors to guide district courts' discretion in ruling on a § 1782 application: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the § 1782 application is an attempt to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request for discovery is "unduly intrusive or burdensome." Intel, 542 U.S. at 264–66. "The Intel factors are not to be applied mechanically, and a district court should also take into account any other pertinent issues arising from the facts of the particular dispute." In re del Valle Ruiz, 939 F.3d at 533 (quoting Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 244 (2d Cir. 2018) (internal quotation marks omitted)).

12

Oddly, the only factor discussed by intervenors is the final factor, whether the request is "unduly intrusive or burdensome." Instead, intervenors primarily focus on the need, or lack thereof, for the deposition testimony. While this argument does not fit within the factors laid out by the Supreme Court, Intel does not suggest that those factors are exclusive, and courts have specifically instructed to "take into account any other pertinent issues arising from the facts of the particular dispute." Id. Moreover, the court has wide discretion in considering Servotronics' application. Therefore, the court indulges intervenors' argument and then turns to the four factors discussed in Intel.

### i. Necessity of Deposition Testimony

Intervenors argue that Servotronics has failed to show how the requested deposition testimony would be of assistance to the U.K. arbitral tribunal. They explain that Boeing has already produced written witness statements of Sharkshna and Walston (among others), which were taken contemporaneously with the January 2016 incident. Boeing has also produced the internal investigation report of the incident, surveillance video footage of the incident, and numerous other related documents. Finally, Boeing has agreed to produce the audio recordings of the incident from Sharkshna's and Shifley's headsets and its manufacturing and engine records related to the incident. There is no dispute as to the authenticity of this evidence. As such, intervenors argue that the original and best sources of facts about the incident are already available to the U.K. arbitral tribunal, making the deposition testimony unnecessary. Intervenors also argue that there is no dispute about the facts themselves and instead the case will be a "battle of the experts," meaning that there is no reason to gather additional facts.

In response, Servotronics argues that the deposition testimony is necessary to its defense that the incident occurred as a result of Boeing and Rolls-Royce's negligent performance of their maintenance troubleshooting for fuel flow problems, not a malfunction of the Servotronics valve. Specifically, Servotronics contends that the witnesses have knowledge of facts highly relevant to its defense, including "the numerous improper, inadequate, and incorrect actions and failures to act of Boeing and Rolls-Royce employees in regard to the chain of causation leading to the tail pipe fire" and "Boeing's post-incident investigation, which is also relevant to the issue of its negligence and chain of causation." ECF No. 1-1 at 4. Servotronics explains that the previously provided witness statements are not a substitute for sworn testimony that is subject to direct and cross examination and that the statements are also fragmentary and at some points barely legible. With regard to intervenor's argument about experts, Servotronics notes that experts must use facts to form their opinions and that the experts may incorporate facts learned during the deposition into their reports.

While Boeing has shared a good deal of evidence, the court agrees with Servotronics that deposition testimony has considerably more evidentiary value than written statements, namely due to the opportunity for examination under oath. Moreover, Servotronics should be able to build its case with the evidence that it deems most helpful, and intervenors should not be permitted to decide for Servotronics that it has sufficient evidence without the depositions. Finally, while the dispute may come down to a "battle of the experts," experts use facts to form their opinions, and the court can easily imagine that additional deposition testimony about the circumstances of the incident could be

useful to an opinion.  In sum, the court is unconvinced that the deposition testimony is
unnecessary to the arbitration hearing.

## ii.  Whether Proposed Deponents are Parties to the Arbitration

Turning to the discretionary factors discussed in <u>Intel</u>, the court first considers
whether the proposed deponents are parties to the arbitration because "when the person
from whom discovery is sought is a participant in the foreign proceeding . . . , the need
for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought
from a nonparticipant in the matter arising abroad."  <u>Intel</u>, 542 U.S. at 264.  Servotronics
explains that the only parties to the arbitration are Servotronics and Rolls-Royce,
meaning that neither Boeing nor either of the two relevant witnesses are parties.
Intervenors do not dispute this point.  Moreover, while intervenors at one time contended
that the witnesses would be available to examine at the arbitration hearing, they have
informed the court that they can no longer stand behind that guarantee.  In other words,
Servotronics' application may be the only means by which it can obtain testimony from
Sharkshna and Walston.  Therefore, this factor weighs in favor of granting Servotronics'
application.

## iii.  The Nature of the Foreign Tribunal, Character of the Proceedings Underway, and Receptivity of the U.K. Arbitral Tribunal to U.S. Federal-Court Judicial Assistance

With regard to the second factor, Servotronics explains that arbitration under the
rules applied by the U.K. arbitral tribunal, the Chartered Institute of Arbitrators
("CIArb") Rules, is not dissimilar from proceedings in an American court.  The parties
submit pleadings, briefs, and evidence.  Servotronics submitted a declaration by Akhil
Shah ("Shah"), one of Her Majesty's Counsel, in which Shah attests that under CIArb

15

rules, parties gather evidence and submit it to the arbitrators, and that evidence obtained through discovery, including discovery conducted in foreign countries, may be submitted. ECF No. 1-6, Shah Declaration ("Shah Decl.") ¶ 14.  The arbitrators will then consider the evidence and arguments made by the parties.  Id. ¶ 15.  Again, intervenors do not address this factor or any of these arguments.  Based on the U.K. arbitral tribunal's seeming willingness to accept evidence collected during foreign discovery, this factor weighs in favor of granting Servotronics' application.

### iv. Whether Servotronics' Application is an Attempt to Circumvent Foreign Proof-Gathering Restrictions

As to the third discretionary factor, Servotronics argues that the CIArb rules permit discovery and submission of testimonial evidence and that no judicial or arbitral authority in the U.K. has rejected Servotronics' effort to obtain the testimony. Servotronics cites to the Shah Declaration for these points.  See Shah Decl. ¶¶ 19, 22. Again, intervenors do not respond to this argument, leaving the court with no reason to find that Servotronics is attempting to circumvent foreign proof-gathering restrictions.

### v. Whether Servotronics' Request is Unduly Intrusive or Burdensome

With regard to the final discretionary factor, intervenors argue that these depositions would impose a burden on Boeing because the subject matter of the dispute is sensitive, and Boeing would have to closely review the depositions transcripts for proprietary information and export-control limitations.  Intervenors further note that these depositions would be an unwarranted intrusion into Boeing's business and place a burden on Boeing employees during an already difficult time for business, citing the COVID pandemic.  In response, Servotronics argues that the evidence gathering will be narrow,

as it only entails two depositions related to facts and circumstances of a single incident that occurred over a couple days.  Additionally, Servotronics notes that it is unlikely that any proprietary information would be disclosed, but if it were, there's a binding non-disclosure agreement already in place amongst the parties.

In the court's view, the two requested depositions seem neither unduly intrusive nor overly burdensome.  Whatever burden Boeing might incur by reviewing only three deposition transcripts for proprietary information is likely minimal.  Moreover, the non-disclosure agreement should protect any proprietary information that may be discussed in the depositions.  And while the COVID-19 pandemic could complicate the deposition process, the pandemic alone is not a reason for disallowing the depositions to take place. The wheels of the justice system have continued to turn during the pandemic, and its participants have become accustomed to operating within the pandemic's limitations, utilizing technology that is fast becoming the norm.  Likewise, Boeing has had over a year to acclimate to the conditions of COVID-19, and the court is confident that the burden imposed by the depositions will not significantly affect its business.  In sum, all four factors weigh in favor of granting Servotronics' application and granting leave for Servotronics to serve its subpoenas.

### c. Court Supervision

Finally, intervenors argue that in the event the court grants Servotronics' application, the court should actively oversee the evidence-taking.  Intervenors contend that instead of permitting depositions to be conducted as they usually are, the court should require Servotronics to submit its proposed witness questions to intervenors and give intervenors an opportunity to object on grounds of relevancy and privilege, to be

ruled on by the court.  Rolls-Royce would also like the opportunity to submit questions

following the same procedure, and have witnesses provide written answers to the

questions.  In arguing this position, intervenors cite to the Fourth Circuit's opinion, which

states that "the process must be administered in the discretion of the district court—not

the parties, as is the case in discovery—to assist in the limited role of receiving evidence

for use in the foreign tribunal proceeding."  Servotronics, Inc., 954 F.3d at 215.  In

response, Servotronics argues that the Fourth Circuit did not mandate any sort of process

for evidence-gathering, explaining that "the Fourth Circuit expected this Court to

consider the Intel discretionary factors, not conduct an independent inquisition, subject of

course to the Court's own assessments of efficiency and legal requirements."  ECF No.

21 at 2.

Courts frequently permit the issuance of deposition subpoenas when granting

§ 1782 applications.  See In re Gorsoan Ltd., 2020 WL 3172777, at *1 (S.D.N.Y. June

15, 2020) (noting that the court granted a § 1782 application, which included deposition

subpoenas); In re Mother's Milk, Inc., 2020 WL 2514315, at *2 (E.D.N.C. May 15,

2020) (same); In re Kidd, 2020 WL 2404928, at *1 (D. Conn. May 12, 2020).  These

courts make no mention of any special, court-supervised procedure for conducting the

depositions.  Moreover, the court does not interpret the language quoted by intervenors to

mean that the Fourth Circuit requires this court to adhere to any particular method of

administering its assistance under § 1782.  Again, this language from the Fourth Circuit

was in response to Boeing's concern that applying § 1782 to foreign arbitration

proceedings would result in full-fledged discovery permitted by the Federal Rules of

Civil Procedure.  The Fourth Circuit thought that this concern was unfounded because

§ 1782 simply permits a federal district court to serve the limited role of providing assistance with collecting evidence, while the Federal Rules of Civil Procedure allow parties to initiate and conduct discovery without court involvement.  Further, the plain language of § 1782 indicates that it is completely acceptable to allow parties to conduct traditional depositions as opposed to the court-monitored process proposed by intervenors.  The statute states that an order granting a § 1782 application "may prescribe the practice or procedure . . . for taking the testimony" but that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken . . . in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782.  As such, the statute clearly contemplates depositions being taken in accordance with the Federal Rules.

And finally, the Fourth Circuit's writ again undermines intervenors' interpretation of the law.  The Fourth Circuit directed the court to resolve Servotronics' application "without delay," out of a concern that the application may be mooted by the approaching arbitration hearing, scheduled for May 10, 2021.  ECF No. 46 at 3.  Thus, the court declines to invite further opportunities for delay by hamstringing the authorized discovery with red tape.  Instead, the court grants Servotronics' application and, in accordance with § 1782, grants Servotronics leave to serve the subpoenas there-attached upon Sharkshna and Walston.  ECF Nos. 13-5, 13-7.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the application.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 16, 2021**
**Charleston, South Carolina**